**JEFFERSON AMUSEMENT CO. v.·
EAVES et al.**

No. 3535.

Court of Civil Appeals of Texas. Beaumont.

Feb. 2, 1940.

Rehearing Denied Feb. 21, 1940.

King & Rienstra, of Beaumont, for appellant.

Elton Cruse, of Beaumont, for appellees.

COMBS, Justice.

Appellant, defendant in the court below, operates the Rio Theater, in the city of Beaumont. For the convenience of its patrons it maintains a ladies lounge or rest room, which is reached by a flight of stairs extending up from one side of the lobby. On September 16, 1937, appellee, Mrs. Bertha Eaves, while descending said stairs, with her one year old baby in her arms, tripped and fell receiving certain personal injuries, for which she and her husband sought damages in this suit. The suit was predicated on allegations of several acts of negligence:

(1) That a piece, about six inches long and two inches wide, was broken out of one of the steps on said stairway, which caused Mrs. Eaves to slip and fall.

(2) That the carpet covering said steps where plaintiff fell was wrinkled so as to catch plaintiff's heel or shoe.

(3) That the carpet covering said steps was not tacked down and was thus allowed to become loose and wrinkled so as to catch the heel or shoe of Mrs. Eaves.

(4) That said flight of steps were not lighted or were inadequately lighted or illuminated.

(5) That the defendant failed to provide any handrail for the use of its patrons in

coming down said flight of stairs. In answer to special issues the jury found said issues of negligence in favor of the defendant, except the following: (a) The carpet covering the steps was wrinkled so as to catch the heel of Mrs. Eaves' shoe; (b) That such wrinkled condition of the carpet was negligence; (c) That such wrinkled condition of the carpet was a direct and proximate cause of her injuries; (d) That defendant knew of such condition of the carpet; (e) That by the exercise of ordinary care defendant would have known of such wrinkled condition of the carpet in time to have avoided the injury. And also that the carpet on the stairs was not tacked down, that defendant's failure to have it tacked down was negligence directly and proximately causing Mrs. Eaves' injuries, and that the defendant knew that the carpet was not tacked down, or by the exercise of ordinary care would have known of it in time to have prevented her injuries. The jury resolved the issues of contributory negligence in favor of the plaintiffs and fixed damages in the amount of $5,000, for which the trial court entered judgment.

### Opinion.

From a careful examination of the statement of facts, we conclude that the evidence was insufficient to sustain the jury's findings convicting the defendant of negligence proximately causing the injuries to Mrs. Eaves.

With respect to the wrinkle in the carpet causing Mrs. Eaves to fall, the testimony was very brief. Mrs. Eaves simply testified:

"Q. Now just tell the jury in your own words how that fall came about. A. Well, when I entered the show I went and sat down for a few minutes and the baby started crying. I got up and went up stairs and stayed up there all through the show, and when I started down stairs I hung my heel in the wrinkle in the carpet and fell."

· She further testified that the place from which she fell was about the third or fourth step from the bottom. The above quotation is her entire testimony concerning the condition of the carpet on the stairway. ·She did not testify to having observed any defect in the carpet when she ascended the stairs to the rest room. Mr. Eaves testified that he was standing in the lobby nearby when Mrs. Eaves fell, although he did not see her fall. After her fall he viewed the stairway from the distance of a few feet

and later in the day he returned and looked at the stairs again. He testified there was a piece gone out of the tread of the third step about one and a half inch wide and eight inches long and that the carpet was depressed down into the depression. His testimony that there was a defect in the tread of the stairs was strongly controverted and was found against the plaintiffs by the jury. In respect to the carpet being wrinkled, he said:

"Q. Just tell the jury what condition you found those stairs in. A. There was a piece gone out of the step, about that long and about that wide (indicating) and there was a roll-up there, I would say about that high (indicating) where the carpet had worked up, people going up and down, I guess is what caused it to work loose; and it was plenty high to trip anybody up."

On further examination, he testified that the wrinkle in the carpet was about two inches high.

Disregarding the defendant's evidence, which strongly controverted the plaintiffs' proof of any defect in the carpet, and viewing the plaintiffs' evidence in a light favorable to the jury's findings, we think the evidence insufficient to support any findings to the effect that the defendant knew, or by the exercise of ordinary care would have known, of the wrinkled condition of the carpet. There was no evidence from any source that the carpet on the stairs had not been properly tacked down, that is to say there was no evidence of any structural defect. There was no evidence to show that the wrinkled condition of the carpet had existed for any sufficient length of time to raise an inference that the defendant knew of it, or by the exercise of ordinary care would have known of it. No one testified to having observed the wrinkled condition of the carpet prior to the time Mrs. Eaves fell. For aught the record shows, the loosening and wrinkling of the carpet may have been occasioned by the heel of Mrs. Eaves' shoe slipping from· the edge of the step.

We recognize that under the circumstances it may be somewhat difficult for plaintiffs to produce proof that the defect in the carpet had existed for sufficient time to raise a reasonable inference that the defendant knew of it, or by the exercise of ordinary care should have known of it. · But even so,. the burden was upon the plaintiffs to establish their cause of action

and offer proof to support the findings in their favor. See Osborne v. Loew's Houston Co., Tex.Civ.App. 120 S.W.2d 947, and authorities cited.

For the reasons above discussed, we deem it necessary to reverse the judgment of the trial court. We do not render judgment for the defendant but will remand the case for a new trial.

Reversed and remanded.