## The Dallas Joint Stock Land Bank of Dallas v. Walter Britton.

No. 7418.  Decided February 7, 1940.
Rehearing overruled March 13, 1940.
(135 S. W. 2d Series, 981.)

530

*McCombs, Andrews & Johnson,* of Dallas, for plaintiff in error.

The bank was not liable for the imprisonment of Britton, since its only connection with the proceedings was that of a party litigant. Baten v. Houston Oil Co., 217 S. W. 394; Usher v. Skidmore, 28 Texas 616; Joske v. Irvine, 91 Texas 574, 44 S. W. 1059.

*Geo. W. Barcus* and *W. V. Dunnam,* both of Waco, and *Carl Mason,* of McGregor, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

It is advisable to set out first the factual background of this suit.

During the year 1932, one Gross was appointed by the District Court of Nueces County receiver for certain lands in McLennan County belonging to the Porterfield estate. Said receiver through an agent rented to Walter Britton for the year 1934 a part of said Porterfield lands, and the rental con-

tract, among other things, contained a provision that Britton was to pay as rental one fourth of the cotton raised upon the land rented to him. It is undisputed that the rental due by him from the cotton raised on the land was $226.55.

After appointment of the receiver in Nueces County the Dallas Joint Stock Land Bank sued representatives of the Porterfield estate in the District Court of Dallas County to foreclose a lien upon the land in McLennan County, a part of which was rented to Britton in 1934 as above stated. In that proceeding a receiver was appointed by the Dallas County District Court. In the case of Gross v. McCallum, 123 Texas 110; 69 S. W. (2d) 46, the Supreme Court held that the receiver appointed by the Dallas County District Court had superior right to possession of the Porterfield property. On the 12th day of October, 1934, T. M. Dillard was appointed by the Dallas County District Court to succeed the previously appointed receiver. The order appointing Dillard authorized him to take possession of the property in McLennan County and to "receive and collect rents and revenues due and unpaid by tenants, or thereafter to become due." Apparently at this date Britton had moved from the Porterfield land, but had not paid the $226.55 rent. Shortly after his appointment Dillard made demand upon Britton for said rent. Britton refused to pay same to the receiver, claiming that he was due an offset of $375.00 for certain work done under some kind of agreement with the agent of Gross, the receiver appointed by the District Court of Nueces County, whose authority had been superseded by the appointment of the receiver in the Dallas County District Court. Dillard refused to recognize the justness of the offset, but insisted upon Britton paying the $226.55 to him as receiver. Dillard reported the matter to the attorneys for the Dallas Joint Stock Land Bank, who appeared to have also represented Dillard himself to some extent.

On January 5, 1935, an attorney for the Dallas Joint Stock Bank filed in the receivership proceeding, in the name of and on behalf of the bank, an affidavit setting out the fact of the appointment of a receiver, stating his powers, that Britton was due said receiver rents for the year 1934, and that he had refused to turn same over to the receiver. The prayer was that said Britton be held in contempt of court for such failure. Although cited to appear and show cause, Britton did not appear before the court at the appointed time, and the Court did not hold him in contempt.

On February 15, 1935, the attorney for the bank, in the name of the bank and on its behalf, filed another affidavit in

substance the same as the one of date January 5, 1935. Citation to Britton was issued and served upon him, commanding that he appear on March 9, 1935, and show cause why he should not be held in contempt for his failure to turn over to the receiver the rents in question. To this citation was attached a copy of the affidavit filed February 15, 1934. On March 9, 1935, in response to said citation Britton appeared in the District Court of Dallas County with his attorney and a hearing was held. The judgment then entered recites the appearance of Britton with his attorney, the hearing of proof and the argument of counsel. The court at such hearing found that Britton had in his possession the sum of $226.55 due the receiver as rents, and that he had failed and refused to turn same over to said receiver. In the present action, the testimony showed that Britton at that time testified, and, presumably at least, set up his counter claim. The court thereupon entered an order declaring Britton in contempt, but expressly allowed him until April 9, 1935, to pay over said rents to the receiver. The testimony of the district judge shows that Britton promised to pay the rent money to the receiver, and was given the assurance that a claim filed by him with the receiver for the claimed offset would receive proper attention. A letter of date April 13, 1935, by the attorney for Britton to the attorney for the bank stated that Britton was perfectly willing to adjust the matter, provided the attorney for the bank would assist in the collection of the claim due him, Britton, under the agreement with the Nueces County receiver.

Nothing further was done in the matter. On November 6, 1935, the district judge asked the attorney for the bank if Britton had turned over the $226.55 to the receiver, and the attorney advised the judge that this had not been done. Thereupon the district judge entered another order declaring Britton in contempt and directing the issuance of a commitment. Writ of commitment issued November 9, 1935, and was served upon Britton in McLennan County November 23, 1935. Britton was committed to jail on Saturday night, where he remained until released by an order of the Supreme Court on Monday afterwards. Later, in a habeas corpus proceeding in the Supreme Court, he was discharged. 127 Texas 85, 92 S. W. (2d) 224.

The present suit was instituted May 21, 1936, by Walter Britton as plaintiff, who will be so designated here. It was against Dallas Joint Stock Land Bank, a corporation, Searcy L. Johnson, attorney for said bank, Smoot Schmidt, Sheriff of Dallas County, W. D. Walker, a deputy sheriff, and T. M. Dillard, receiver. The amended petition on which trial was had

does not show that the district judge was made a party, but there is an order entered dismissing the cause as to him. All parties other than the Dallas Joint Stock Land Bank were dismissed from the case, and said band is the sole remaining defendant. It will be so designated here.

In the district court the jury found in favor of plaintiff for the sum of $4000 actual damages, and for the sum of $5000 exemplary damages. The trial court required a remittitur of $1500 of the actual damages and entered judgment for $7500. The Court of Civil Appeals required a remittitur of $2500 exemplary damages and affirmed the judgment of the district court. 114 S. W. (2d) 907.

■ The cause was tried in the district court on the theory that it was a suit for malicious prosecution. It was decided by the Court of Civil Appeals upon that theory. It has been briefed by all parties as such a case. This fact being of controlling importance, we shall seek to demonstrate that the case was pleaded and tried as one for malicious prosecution.

Plaintiff in his petition, after formal allegations, alleged that defendants "entered into a conspiracy to harass, persecute, imprison, malign, injure and *maliciously prosecute* plaintiff by instituting a series of suits, petitions requiring plaintiff to appear in the District Court of Dallas County to show cause why he should not be punished as for contempt." He then alleged the appointment of a receiver by the District Court of Dallas County, the appointment of a receiver by the District Court of Nueces County, the agreement between himself and the last named receiver, the filing of a statement with the Dallas County Receiver showing amount of the rent due and the amount of the offset claimed by him. He further alleged that he was not a party to the receivership proceeding, and that the court did not have jurisdiction of the claim involving rents. It is then alleged that the defendants "for the purpose of injuring, harassing, *maliciously prosecuting* and imprisoning plaintiff in jail, instituted and carried on the following acts." He then sets out (a) the filing of the affidavit of January 5, 1935, and the action of the court thereon; (b) the filing of the affidavit of February 15, 1935, the issuance of citation thereon, the hearing on March 9, 1935, and the action of the court at such hearing; (c) the action of the court on November 6, 1935, resulting in the entry of another order of contempt and directing issuance of commitment; and (d) the issuance of commitment and service upon him, as result of which he

was confined in jail The following general allegation is then made:

"Plaintiff shows to the Court that each and all of said acts above done were for the use and benefit of the defendant, The Dallas Joint Stock Land Bank of Dallas, and all of same were done maliciously, willfully and wantonly and without probable cause therefor by said defendant."

Plaintiff then sets out allegations pertaining to the matter of injuries and damages.

It is then alleged that "in the institution and prosecution of said wrongful suits and actions against him, etc., defendants and each of them acted maliciously, intentionally and without just cause or excuse and without probable cause." The following general allegation is then added:

"Plaintiff alleges that the defendants and each of them maliciously, wilfully and without probable cause, and with the intention of injuring plaintiff, and in furtherance of the *malicious prosecution* of him as hereinbefore fully set forth, caused the Sheriff of Dallas County through his deputy, W. D. Walker, to come to McLennan County and arrest plaintiff and carry him to Dallas County where he was incarcerated in jail as hereinbefore set forth."

■ Preliminary to setting out some of the specific issues submitted to the jury we call attention to the fact that want of probable cause and malice are two of the essential elements of a cause of action for malicious prosecution. They are neither essential elements of a cause of action for false imprisonment, although malice may be pleaded in connection with a claim for exemplary damages.

Special Issue No. 1 was as follows:

"Do you find from a preponderance of the evidence, if any, that the defendant, The Dallas Joint Stock Land Bank of Dallas, acted without probable cause, as that term is defined for you below, *in filing and prosecuting the affidavits and petitions for contempt* in this case?

Special Issue No. 2 was as follows:

"Do you find from a preponderance of the evidence, if any, that defendant, The Dallas Joint Stock Land Bank of Dallas, acted with malice as that term is defined for you below, *in filing and prosecuting the affidavits and petitions for contempt* in question?

Special Issue No. 3 was as follows:

"Do you find from a preponderance of the evidence, if any, that the plaintiff, Walter Britton, sustained any actual damage as a proximate result of the *filing and prosecution of the affidavits and petitions for contempt* which were filed against him, and his imprisonment resulting therefrom as herein defined?"

Special Issue No. 4 was as follows:

"How much actual damage, if any, do you find from a preponderance of the evidence, if any, that the plaintiff, Walter Britton, has suffered as a direct and proximate result of the *filing and prosecution of the affidavits and petitions for contempt* which were filed against him and his imprisonment resulting therefrom?"

In brief filed in the Court of Civil Appeals by plaintiff among other things we find the following:

"The question of the right of a private citizen to recover damages against a party who wilfully, maliciously and without probable cause institutes proceedings which result in his being incarcerated in jail has been a number of times before our courts."

Counsel quote from numerous cases, most of which involve malicious prosecution. The following quotation is taken from said brief:

"In Gulf, C. & S. F. Ry. Co. v. James, 73 Texas 12, 10 S. W. 744, 15 Am. St. Rep. 743, the Supreme Court held that the corporation was liable for the *malicious prosecution* instigated by its employes, and said opinion gives a full and complete discussion relative to said matter.

"In Daughtry v. Blanket State Bank, 41 S. W. (2d) 527, the Court holds that the corporation was liable for the acts of its officers in instituting and carrying on *malicious prosecution.*

"In 38 C. J. 445, there is a general discussion of the damages that may be recovered as the result of a *malicious prosecution.* Such element of damages include loss of time, deprivation of liberty, and all circumstances of aggravation attending it, such as bodily pain, injury to reputation, mental suffering, general impairment of social and mercantile standing, as well as expenses incident to his having obtained his release.

"In 18 R. C. L. 71 to 76, there is also a general discussion of what it takes to constitute *malicious prosecution,* and what elements of damage may be considered, and on page 76 it states

that the defendant's financial circumstances may be shown in connection therewith.

"In 28 Tex. Jur., beginning on page 448 and through page 464, is a full and general discussion of the essentials of *malicious prosecution* and what it takes to constitute malice and the lack, or want, of probable cause." (Emphasis supplied by us.)

Practically all of the foregoing statements are repeated in the reply to application for writ of error filed in this court.

The Court of Civil Appeals in its opinion referred several times to the case as one for malicious prosecution, and cases pertinent to such an action are cited, as well as the penal statutes pertaining to that offense.

We think therefore that it cannot even be questioned that all parties, particularly plaintiff, have proceeded from the beginning on the theory that this was a suit for malicious prosecution.

It seems to us evident that plaintiff has wholly failed to establish a case of malicious prosecution. If any action may be sustained, it is one for false imprisonment. The distinction between malicious prosecution and false imprisonment, as well as the essential elements of each offense, are stated in the following quotation from 28 Tex. Jur., pp. 446-447:

"There is a fundamental distinction between an action for malicious prosecution and one for false imprisonment. False imprisonment is an unlawful and unauthorized interference with the personal liberty, while malicious prosecution consists in procuring the arrest or in the prosecution of the plaintiff *under lawful process* on the forms of law, but from malicious motives and without probable cause. In other words, if the imprisonment was under *lawful process*, but the prosecution was commenced and craried on maliciously, a malicious prosecution is shown, while if the arrest or imprisonment was *without lawful authority*, an action for false imprisonment lies."

See particularly the case of American Motors Finance Co. v. Clecker, 28 S. W. (2d) 274.

In the habeas corpus proceeding in the Supreme Court plaintiff was discharged because the order of contempt and the commitment were wholly void on the ground of lack of jurisdiction over the person of Britton in the receivership proceeding. In fact, under our decisions a discharge in a habeas corpus proceeding growing out of a contempt in a civil case generally

rests solely upon the fact of want of jurisdiction. In our research we have been unable to find any case in any court where malicious prosecution has been sustained as a result of a contempt action. Plaintiff seems to rest his whole case upon the fact that the Supreme Court held the contempt order *void*. The process being void, malicious prosecution is not a remedy.

There are other reasons which might be discussed showing that the suit and judgment cannot be sustained upon the theory of malicious prosecution, but the matter is so obvious from the record that we feel it wholly unnecessary to discuss it further.

As indicated above, it is perfectly plain that as disclosed by the present pleadings, plaintiff's remedy, if any, is one of false imprisonment. We shall assume (but not decide) that the pleading was sufficient to support such an action, although there is some doubt upon that point. Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S. W. (2d) 803. We shall also assume, for the purpose of this decision, that the evidence and findings of the jury were sufficient to establish a case of false imprisonment. Notwithstanding these assumptions we think there was error in the trial which effected the result.

Early in the trial of the case plaintiff offered in evidence, over objections by defendant, a certified copy of the opinion of the Supreme Court in Ex Parte Walter Britton, reported in 127 Texas 85, 92 S. W. (2d) 224. Later, plaintiff introduced a certified copy of the judgment of the Supreme Court in that proceeding, and withdrew the certified copy of opinion. The court thereupon instructed the jury not to consider the opinion. The defendant moved the court to declare a mistrial, which motion was overruled.

The argument of counsel complained of is as follows:

"Now, Gentlemen of the Jury, what has been offered as a defense here to it? They brought the judge down here and put him on the stand with the only purpose in view of undertaking to cause you gentlemen to believe the Judge took the bull by the horns and put him in, put Walter Britton in jail, and that the Bank had nothing to do with it. What did he do? He did exactly what the Dallas Joint Stock Land Bank asked him in the sworn pleading to do— to put Walter Britton in jail until he paid the rents and otherwise purged himself of contempt. That is what the Judge did, just what they asked him to do. Judge Barcus was criticized by Mr. Darden because of some reference he made to the Judge of the County of Dallas. I want

to say to you, gentlemen, that tyranny in high places deserves greater admonition than the wrong of the average citizen.

"Mr. Darden: We object to that argument, Your Honor. No evidence here of any tyranny; it is inflammatory and prejudicial.

"Mr. Dunnam: The Supreme Court held he was.

"Mr. Darden: I object to that statement because the Supreme Court does not hold that the Judge is tyrannical.

"The Court: I overrule the objection.

"Mr. Darden: Note our exception.

"Mr. Dunnam: (Continues argument.) The Court held that The Dallas Joint Stock Land Bank, that what The Dallas Joint Stock Land Bank did and what the Judge said, was unlawful, and here is a certified copy of the Judgment of that court which speaks for itself, and that Court says, because it is the opinion of the Court that the relator is deprived of his liberty he should be discharged."

■ The opinion of the Supreme Court was not admissible for any purpose, and the recitals therein were not binding upon the defendant. The judgment of the Supreme Court was admissible only for the purpose of showing that the confinement of plaintiff was illegal. A very similar question was presented in the case of Caruthers v. Hines, 290 S. W. 155 by the Commission of Appeals. In that case Hines obtained an injunction against Caruthers in the District Court of Wichita County restraining the construction of a certain building. The district court adjudged Caruthers in contempt for violation of this injunction. Caruthers instituted habeas corpus proceedings in the Federal district court and was discharged. He then instituted suit against Hines for damages, on the ground that the injunction was illegal and void and constituted an unlawful interference with his property. In order to show that the injunction was invalid he alleged that in the habeas corpus proceeding same had been adjudged to be illegal and utterly null and void. A general demurrer was sustained to the petition, and this action was upheld by the Commission of Appeals. The gist of the opinion is in this language:

"Recitals in a judgment cannot be looked to so as to bind parties not made parties to a suit, and who did not appear. So we hold in this case that the recital in the judgment of the Federal District Court to the effect that the proceedings in the injunction case in the District Court were void cannot be looked to so as to bind the defendants in error who were not parties to the habeas corpus proceeding."

■ We think the foreegoing argument was an unauthorized comment upon the effect to be given the opinion of the Supreme Court, which the trial court had attempted to withdraw from consideration of the jury, and also upon the effect of the judgment of the trial court. Counsel had no right to tell the jury what the Supreme Court had held concerning either the judge or defendant Bank. The action of the Court in overruling the objections tended, at least, to constitute a comment by the judge upon the evidence. Lewter v. Lindley, 89 S. W. 784.

Without going into a lengthy discussion of the matter we further state that it is our opinion that the argument complained of was improper, so far as the matter of damages was concerned, because it constituted an effort to penalize defendant for the alleged "tyrannical" acts of the judge of the court. While defendant may have been legally liable as a consequence of any unauthorized order of the judge, it should not be penalized because said order may have been prompted in some degree by a spirit of tyranny on the part of the judge.

For the reasons above stated, and because the case was obviously tried upon a wrong theory, the judgments of the Court of Civil Appeals and of the trial court are reversed and the cause is remanded.

Opinion adopted by the Supreme Court February 7, 1940.

Rehearing overruled March 13, 1940.