TEXAS & PAC. RY. CO. et al. v. CASSADAY.

No. 14164.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 24, 1941.

Rehearing Denied March 14, 1941.

Cantey, Hanger, McMahon, McKnight & Johnson, W. D. Smith, and Frank F. Taylor, all of Fort Worth, for appellant.

Marvin B. Simpson and Robert Harrison, both of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff, R. F. Cassaday, sued Texas & Pacific Railway Co. and Missouri, Kansas & Texas Railway Co. for damages sustained from the derailing of a car, while employed by the former named defendant. Plaintiff recovered a judgment against his employer company and was denied relief against the other named defendant.

Cassaday alleged that an oil tank car became derailed while he was performing services for the company, because of the negligence of one or both of the defendants; resulting in the injuries described. The alleged negligence consisted of (a) failure to keep their track in proper repair and in a safe condition for use, such as plaintiff was required to perform; the nature of the negligent acts are set out with sufficient certainty; and, in the alternative, (b) that if mistaken in the nature of negligence previously mentioned, then from some other negligent acts unknown to him but known to defendants; that the tracks, engine and cars were all in the immediate control of defendants when the accident happened and it would not have occurred but for some negligent act of defendants, the exact nature of which he was unable to better identify.

Allegations were made that on about July 1, 1937, he entered into a settlement agreement with defendant Texas & Pacific Railway Co. for the sum of $850, and executed a form of release to that company from further liability; but that he was induced to make such settlement because of the false statements of the company's claim agent and physicians as to the extent of his injuries, and the statement of the claim agent to the effect that if he (the plaintiff) was not entirely recovered from his injuries after five or six months, the claim would be reopened for further adjustment. That he believed and relied upon the representations of the physicians and claim agent that his injuries were of a minor nature, were not serious and that he would soon be able to work again; that such representations were false and were known by the company's representatives to be untrue when made by them; he prayed that said release be declared void and that he be awarded damages in the amount claimed and that credit be given on the amount of his recovery for $850, the amount formerly paid to him, he being unable to refund said amount at the time of trial.

Defendants answered with general demurrer, general denial and specially to the effect that they had made full, final and complete settlement with plaintiff under the terms of the contract and release of July 1, 1937, paid him with a check, which upon its face provided that said sum was for full and complete settlement of his claim growing out of the accident, and that with full knowledge of the contents of the release agreement and the provisions and conditions of the check, plaintiff had accepted payment, cashed the check and applied the funds to his own use and benefit.

A jury trial was had and special issues were submitted, verdict rendered and judgment entered for plaintiff on the verdict. Texas & Pacific Railway Co. has appealed and will be referred to as appellant while plaintiff in the trial court will be designated appellee.

Appellant's first four propositions complain because the court overruled its motion for a directed verdict. Among the reasons assigned are: (a) because there was no evidence that any negligence of appellant proximately caused his injuries, (b) because appellee's pleadings were insufficient to form the basis of the rule of res ipsa loquitur, and (c) because the evidence conclusively shows that appellee had an opportunity to read the release agreement and was not prevented from doing so by any fraudulent act of appellant's agents.

Appellee's alternative plea was a sufficient basis for the application of the rule of res ipsa loquitur; the accident and the consequent injuries indisputably fol-

474

lowed; res ipsa loquitur is a rule of evidence raising the presumption of negligence, which, even though rebutted, presents a jury question. Alagood v. Coca Cola Bottling Co., Tex.Civ.App., 135 S.W. 2d 1056, writ dismissed, correct judgment, and cases there cited.

■ There is ample testimony in the record to raise the issues of the injuries sustained, the manner in which the accident happened, that the tracks, engine, cars and crew were all under the immediate control of defendants and that plaintiff knew nothing of any defect in the track or cars and that he had no knowledge of any wrongful acts of the employees causing the accident. Likewise the testimony offered clearly presented the issue of whether or not the physicians at defendant's hospital and the claim agent represented to appellee that his injuries were of a minor nature and not serious, that he would be able to resume his labors within five or six months and that believing these representations, plaintiff relied upon them as being true and was thereby induced to make the settlement for $850. and execute the release upon receipt of that amount. In view of these things, it was not error for the trial court to refuse to take the case from the jury and direct a verdict for defendants. Burroughs et al. v. Smith, Tex.Civ.App., 294 S.W. 948, writ refused; City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652; 41 Tex.Jur., pp. 938 and 939, sects. 167, 168, 169 and 170.

Fifth and sixth propositions involve argument of appellee's counsel and a statement made by same counsel, in the presence and hearing of the jury. The argument was timely objected to and the objection was overruled by the court. The statement made by counsel covered by sixth proposition was, upon motion of appellant, withdrawn from consideration by the jury. We think the same rule of law is applicable to both, in a case like this.

Referable to the offending argument, the bill of exception discloses that appellant's three physicians had examined and read an X-ray picture and testified therefrom as to the nature and extent of appellee's injuries; the picture was marked as an exhibit but never offered in evidence (and, of course, not examined by the jury). In his closing argument, appellee's counsel said: " * * * but you (the jury) didn't get, in my judgment, all the facts illustrated by these pictures, because I am going to

tell you that the very pictures that they (appellants) have brought here, that their doctors testified from, show conclusively that not only he (plaintiff) had a wide break, but he has got a separate break right in there (indicating) that they have never described to you. Look at it; pass it around, hold it between you and the light and look along there, and see if you can pass on that. (Whereupon, counsel passed said X-ray pictures to the jury and each juror proceeded to hold the X-ray pictures up to the light and examined the same.) And I ask them why .they did not tell that when their own doctor showed it."

■■ Several pages of Q. and A. transcript of the testimony concerning the picture and testimony of the doctors while interpreting the X-ray pictures are attached to the bill of exception, the trial court approved the bill with a qualification that he did not certify that the testimony attached was all of the evidence in the record on the point. There is nothing in the court's qualifications of the bill of exception showing that the picture was introduced in evidence. The bill thus approved states it was not in evidence. It is a matter of common knowledge that X-ray pictures only reflect shadows of hard or solid substances, and that an expert may detect fractures, dislocations of the bones and other physical defects by an examination of the picture. We do not mean to say that a nonexpert may not be able to see such things, for they may be apparent to any one. The point raised here is that counsel pointed out to the jury what he conceived to be an additional break in appellee's tibia to that testified to by the physicians and exhibited the picture to the jury for corroboration of his contention, at a time when the introduction of evidence had been closed. The overruling of appellant's objection to the argument and exhibition of the picture tended to lead the jury to believe the matters objected to were proper for their consideration, and no one can safely say that they had no harmful effect to appellant's rights, in the verdict returned.

The objection urged to counsel's argument is that the exhibition of the picture, its examination, reading and interpretation by counsel and the jury, had the effect to make appellee's counsel and the jury expert witnesses for that purpose, furnishing outside evidence for consideration by the jury not admitted before them under rulings of

the court. Such argument and evidence claimed to be disclosed by the picture were attempts to show appellee had sustained two fractures to his leg instead of the one testified to by the doctors; that such argument and new evidence were inflammatory and prejudicial to the rights of appellant.

The settled rule of law in this state is that improper argument will require a reversal of the judgment if there is any reasonable doubt as to its harmful effects. Floyd v. Fidelity Union Casualty Co., Tex. Com.App., 39 S.W.2d 1091; Ward v. Brown, Tex.Civ.App., 122 S.W.2d 684; Robbins v. Wynne, Tex.Com.App., 44 S.W. 2d 946; Texas Indemnity Ins. Co. v. Allison, Tex.Civ.App., 75 S.W.2d 999; 41 Tex.Jur., p. 775, sect. 57.

Improper argument by counsel is sometimes said to amount to the furnishing to the jury of outside evidence and is controlled by the same rules governing misconduct of the jury in considering evidence not placed before them under rulings of the court. Robbins v. Wynne, supra; Missouri, K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S.W. 508, 509; Bell v. Blackwell, Tex.Com.App., 283 S.W. 765, 767; Fidelity Union Casualty Co. v. Cary, Tex.Com.App., 25 S.W.2d 302, Commission of Appeals opinion approved.

As indicated above, sixth proposition involves an alleged improper statement by appellee's counsel in the presence of the jury concerning his client being a pauper. Conditions under which the statement was made are, substantially, that while Dr. Hill, a witness for appellant, was testifying, and appellee, upon request, had exhibited to the doctor both his bare knees. Appellant moved the court to require appellee to submit to Dr. Clayton for an examination. At that time appellee's counsel said they had never before been asked to do this, and that this matter, in so far as he knew, had been pending two and a half years, and this was the first request of this kind that he knew of having been made. Appellant's counsel said he was making the request "now". The court overruled the request or motion. At that time, the statement by appellee's counsel was made, at which the assignment of error is leveled. The statement was: "We refuse for this reason: You asked it in the presence of the jury. This case has been pending here two and a half years, and I am not going to let this pauper, this man, be submitted to doctors of the company's choosing after

what has gone on, because he is not able to hire a $100 a day expert to get upon this witness stand and tell the truth about it. Now that is your answer." Upon motion of appellant's counsel, the court excluded the statement made from consideration by the jury. Appellant's counsel then moved that a mistrial be declared, which motion was overruled and exception taken.

We think the statement was harmful, prejudicial and highly inflammatory. We fail to see how the instruction to the jury could possibly remove its damaging effect from their minds. In no event is it proper to try a case upon the comparative wealth of the opposing parties. It seldom happens that litigants possess equal wealth. Even if the evidence should disclose that one is poor and that the other is wealthy, this of itself means nothing as compared to the ultimate issues involved, nor does it authorize a reference to that fact by counsel in argument to the jury. Reference in argument to the poverty or wealth of the contending parties has been universally condemned by the courts of this State. Brown Cracker & Candy Co. v. Castle, Tex.Civ.App., 26 S.W.2d 435; Fort Worth Belt Ry. Co. v. Johnson, 59 Tex.Civ.App. 105, 125 S.W. 387; Dallas Consolidated Electric St. Ry. Co. v. Black, 40 Tex.Civ. App. 415, 89 S.W. 1087; Texas & St. L. Ry. Co. v. Jarrell, 60 Tex. 267; Willis & Bro. v. McNeill, 57 Tex. 465; Humphreys v. Roberson, 125 Tex. 558, 83 S.W.2d 311; Woodard v. Texas & P. Ry. Co., 126 Tex. 30, 86 S.W.2d 38. We think both propositions 5 and 6 are well taken and require a reversal of the judgment in this case for another trial.

There are several other assignments of error presented by appellant, such as that special issue No. 2 was duplicitous; that is, it inquired if appellee believed and relied upon the promise of the claim agent to reopen his settlement under certain named conditions. That special issue 4a was open to the same objection because it inquired if appellee was induced to sign and cash a check in question because of the same misrepresentations. Likewise, Special Issue No. 5, inquiring if appellee was able, at the end of five or six months, to resume his work as brakeman or switchman. These questions were required to be answered "yes" or "no" and such an answer conceivably could be made relative to one matter inquired about but would not be applicable to the other. The manner of

wording the inquiries complained of has been many times condemned. See Article 2189, R.C.S.; Bradley v. Howell, Tex.Civ. App., 126 S.W.2d 547, writ dismissed, correct judgment; Hill & Co. v. Fricke, Tex. Civ.App., 135 S.W.2d 582, writ dismissed, judgment correct, and cases there cited.

■ We see no evidence in the record which raises the issue of unavoidable accident and the court properly refused to submit that issue upon a request by appellant to do so. Other assignments have been carefully studied and finding no error presented by them, they are overruled.

■ A peculiar situation is presented to us upon this appeal. The case was submitted to the jury upon issues almost exclusively inquiring about the alleged fraudulent conduct of appellant's claim agent, in which it was claimed that in an oral agreement between him and appellee, prior to the time the release in writing was prepared and executed, that if appellee was not sufficiently recovered at the end of five or six months, the claim would be reopened. The written release contained no such provision. Appellee says he did not read the instrument before signing it, but admits that he had ample opportunity to do so and was not in any manner prevented from reading and understanding it, by anything said or done by the claim agent. He says he wrote upon the release contract in his own handwriting that he had read and understood it. We think that although the jury verdict to the effect that the claim agent did orally promise appellee that if he did not recover in five or six months, the claim would be reopened, that appellee believed that statement and relied upon it, and was thereby induced to sign the release, finds no proper or legal support in the pleadings. In other words, such a finding under the pleadings and evidence would not, of itself, entitle appellee to a cancellation of the release and authorize a recovery for the injuries sustained. Appellee relies upon the holding in case of Texas & N. O. Ry. Co. v. Thompson, Tex.Com. App., 12 S.W.2d 963. There are expressions found in that opinion which would support his contention, but we do not think what is said there is entirely controlling in the instant case. The facts of that case were different to those here.

Bearing in mind that this suit was brought to recover damages for injuries sustained, proximately caused by appellant's negligence, and to cancel a release contract executed by appellee, because he was induced to enter into a settlement agreement in the first place, by the fraudulent statements of appellant's physicians and the claim agent, to the effect that appellee's injuries were slight and that he would be able to resume his work in five or six months, we think the additional oral statements claimed by appellee to have been made by the claim agent, to the effect that if appellee was not able to resume his work within five or six months, the claim would be reopened, is not a controlling factor in the fraud relied upon by appellee.

We have made the foregoing observation in view of admissions made by appellee's counsel upon the trial and in the briefs before us. During the trial, while testimony was being offered, counsel said, in substance, that it was not contended that Cassaday did not know what was in the release, but admitted that he did know its contents. This means, of course, that appellee knew that there was nothing in the instrument about reopening the case at any future time. Counsel also admitted in open court that appellee read and understood the printed provisions on the draft and with this knowledge indorsed and cashed it. In their brief before us, counsel again reiterate what was admitted upon the trial and add that their contention here, now and at all times, has been that when appellee learned that he had been fraudulently induced to make a settlement (presumably upon the false and fraudulent representations that his injuries were slight) the settlement evidenced by the release contract and the recitations upon the draft are void. The release and draft resulted from the alleged fraudulent misrepresentations about the nature and extent of his injuries.

The record does not disclose just why the case was submitted to the jury upon the single theory that the release contract was void only because it did not include the alleged oral agreement made by the claim agent to reopen the case upon the contingency mentioned above. There is ample evidence in the record to raise the additional theory, and the one apparently relied upon by appellee, that appellee was induced in the first instance to make a settlement of his case for $850 because the physicians and claim agent led him to believe his injuries were not serious and that he would be able to resume his work

within five or six months. Before the court submitted his charge to the jury, appellee prepared and requested the giving of special issues which would have presented this phase of the case, but they were all refused by the trial court. This, as we see it, was the controlling point in the case.

If appellee was induced to make a settlement for the amount mentioned because of the fraud of appellant, and in doing so executed the release contract, the issue would not be determined by whether or not the claim agent agreed at the time of drawing the instrument to reopen the matter if appellee did not recover promptly, nor would it be material whether the release contained such an agreement.

■ If the controlling issue in this case had been whether or not the written release should be cancelled solely because it did not contain provision for reopening the claim if appellee did not recover within five or six months, we think the pleadings were insufficient to admit of evidence on that point. It would have been in violation of the parol evidence rule, which does not permit the contradiction of a written instrument by parol evidence, except under certain conditions.

■ It cannot be denied that the universally recognized rule prevails in this state that fraud vitiates an otherwise apparently valid contract, but it is equally well settled that the terms of a written contract cannot be contradicted or varied by parol. The fraud necessary to vitiate a contract is some misrepresentation, trick, artifice, mutual mistake or device which prevents the coming into existence of any valid contract at all. There are no pleadings by appellee to the effect that the variance between the provisions of the written release and the oral agreement had with the claim agent was occasioned by mutual mistake, misrepresentation of facts, trick, artifice or other device; nor that he was induced to execute it as written on that account. In the present state of the pleadings, appellee was relegated to the establishment as a fact that he was induced to enter into the compromise settlement by the fraud alleged by him. Avery Co. v. Harrison Co., Tex.Com.App., 267 S. W. 254; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47. Much of what we have said on this point was taken from the language used in the last-cited case. As we understand the rule announced in the Patton case, supra, it is to be distinguished from the points discussed in Texas & N. O. Railway Co. v. Thompson, supra. In neither of those cases, however, was plaintiff's right of recovery dependent to any extent upon fraud alleged to have brought about the inducement to make the settlement that was made, as we have involved here. In any event, both of those cases are by the Commission of Appeals, and the opinion in the Patton case was adopted by the Supreme Court, and what was said in the Thompson case was before the court when the Patton opinion was written.

Appellee calls our attention to case of Texas & Pacific Ry. Co. v. Presley, Tex. Civ.App., 127 S.W.2d 914, and says the holding there is applicable here. In that case a somewhat similar situation to that before us was considered, and, as we understand the opinion, the majority attempted to follow Texas & N. O. Railway Co. v. Thompson, supra. Justice Funderburk dissented and based his reasons largely upon the holding in the Patton case, supra. We note that a writ of error has been granted in the Presley case, based upon the dissent.

We cannot say the case at bar was tried upon the wrong theory, but certainly it was submitted to the jury upon a theory which we do not believe the pleadings would support, for the reasons above set out. It was not submitted upon the theory, as contended for by appellee here, that is, that the fraud of appellant induced him to enter into the settlement agreement which was purportedly reduced to writing in the release.

■ Appellant insists here that since, under the pleadings and admissions of appellee, no judgment against it was authorized upon the theory submitted to the jury, the judgment should be reversed and rendered in its favor. We do not agree that this should necessarily follow.

Appellee plead a case of fraud entering into the settlement agreement, and produced evidence sufficient to take it to the jury; if his evidence upon another trial should be the same, and believed by the jury, it would support a judgment in his favor. Upon another trial the phase of appellee's case presented by the pleadings, evidence and the requested issues submitted upon the former trial should be deter-

mined by the jury. Our refusal to render judgment is supported by Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178; Sun Oil Co. v. Gunter, Tex.Civ.App., 125 S.W.2d 338; Dallas Joint Stock Land Bank v. Britton, 134 Tex. 529, 135 S.W.2d 981; Jefferson Amusement Co. v. Eaves, Tex.Civ.App., 137 S.W.2d 104.

For the errors pointed out, the judgment of the trial court should be reversed and the cause remanded for another trial, not inconsistent with these conclusions. It is so ordered.

### On Motion for Rehearing.

Defendant has filed a lengthy motion for rehearing, urging us to revise our original opinion and render judgment in its favor. It is contended that the evidence indisputably shows that the doctors, whom plaintiff claims made false statements to him as to the nature and extent of his injuries, were connected with the Employees Hospital, an institution owned and operated by an Employees Association and not by the defendant. We used language in the opinion which is susceptible to the construction that it was established that the doctors were employees of defendant; the language so used is misleading. We are not to be understood as having found that as a fact, but we discussed the testimony in connection with defendant's contention that it was entitled to an instructed verdict. The evidence is conflicting in its nature, as to whose agents and employees the doctors were. There is ample testimony to have supported a jury finding either way. The question was not submitted and remains undetermined. It would have been error for the court to have instructed a verdict for defendant and, of course, in that state of the record, we could not properly render one for it.

The plaintiff, appellee here, has filed no motion for rehearing, but in a written replication to the motion of defendant, argues that we have erred in holding that there was no competent evidence to support the judgment entered upon a verdict based solely upon a false statement made by the claim agent, at the time the release was executed—a statement that if plaintiff had not fully recovered at the end of five or six months, he would reopen the claim. This was the only fraudulent statement or act submitted to the jury. There were other acts of fraud alleged and supported by some evidence of probative force, but were not submitted. We do not believe that, under the facts here, the release contract could be avoided solely because of the alleged false statement of the claim agent referred to, in view of the fact that plaintiff admits that he knew, when he signed it, there was no such provision in the written instrument.

Plaintiff insists that our holding in this case is in conflict with the rule announced in Texas & N. O. Ry. Co. v. Thompson, Tex.Com.App., 12 S.W.2d 963. We have indicated in the opinion that it is only under certain conditions, which of course must be pleaded, that a written instrument may be contradicted by parol evidence. If we ignore the alleged fraudulent statements made by the physicians and the claim agent, which it is claimed induced plaintiff to agree to accept the amount paid him in settlement of his claim, as was done in the submission of issues to the jury, and rely solely upon the alleged fraudulent statement of the claim agent made at the time the parties were ready to reduce the contract to writing, and the release was so drawn as to omit the promise made to reopen the case under certain conditions, and plaintiff executed it with full knowledge that no such provision was contained in the instrument, it is difficult for us to see just how he could be heard to complain of its contents, under the pleadings with reference to it, as they now exist. We are unable to harmonize the broad language used in the Thompson case with the rule later announced by the same court in Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, adopted by the Supreme Court, especially referable to the parol evidence rule so universally recognized by our courts. We feel impelled to follow our Supreme Court and if there are apparent conflicts in its holdings, the last expression must be presumed to have been used with the other in mind.

The motion for rehearing is overruled.