Affirmed and Memorandum Opinion filed May 7, 2009








Affirmed and Memorandum Opinion filed May 7, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01020-CV

____________

 

ROGER GERDES, Appellant

 

V.

 

MURRAY FOGLER, INDIVIDUALLY, MCDADE
FOGLER, LLP, AND JOHN KENNAMER, INDIVIDUALLY, Appellees

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 2006-15924

 



 

M E M O R A N D U M   O P I N I O N








This case arises out of a post-judgment collection dispute
that culminated in the judgment debtor=s imprisonment for
contempt.  After a higher court declared the contempt order void, the judgment
debtor filed a civil lawsuit against the judgment creditor and the attorney who
represented the judgment creditor, alleging abuse of process, false
imprisonment, and malicious prosecution.  The judgment creditor and his
attorney filed traditional and no-evidence motions for summary judgment, which
the trial court granted.  The judgment debtor now complains, in two issues,
that the trial court erred in granting the motions for summary judgment.  We
affirm.

I.  Factual and Procedural
Background

Appellant Roger Gerdes and appellee John Kennamer were
friends and business associates who became embroiled in litigation.  In a prior
civil suit, Kennamer, through his attorney, appellee Murray Fogler of the law
firm McDade Fogler, LLP, also an appellee,[1]
brought claims against Gerdes seeking a judgment for damages and injunctive
relief involving investments made in real property in Mexico (the APrior Suit@).  In that
litigation, the trial court rendered judgment in favor of Kennamer and against
Gerdes for $915,362.65 and enjoined Gerdes from transferring interests in or
encumbering the Mexico property (the APrior Judgment@).

The First Contempt Order

To obtain satisfaction of the Prior Judgment, Fogler, on
Kennamer=s behalf, sought
and obtained three turnover orders requiring Gerdes to produce, among other
things, stock certificates, documents, and other original evidence of ownership
and transfers pertaining to the Mexico property.  Gerdes did not comply with
the turnover orders.  On February 10, 2003, the trial court held Gerdes in
civil contempt of court for violation of two turnover orders.  The trial court
ordered Gerdes confined Auntil such time as he fully complies with
the [turnover] orders@ (the AFirst Contempt
Order@).








Gerdes was confined in the Matagorda County jail beginning
on September 17, 2003.  The record reflects that Gerdes=s confinement was to last until the
earlier of (1) the date he complied with the trial court=s turnover orders, or (2) March 16,
2005, the date marking the expiration of eighteen months from his initial
confinement.  By signing the First Contempt Order the court continued a prior
injunction enjoining Gerdes and those acting in concert with him from
transferring, selling, wasting, or encumbering the Mexico property until Gerdes
complied with the turnover orders.

The Second Contempt Order

After Gerdes=s confinement,
Kennamer and Fogler learned that shortly before the confinement, on August 7,
2003, a lease agreement on the disputed property had been executed in violation
of the trial court=s injunction.  Fogler, on Kennamer=s behalf, filed a
motion for contempt against Gerdes alleging Gerdes had violated the trial court=s injunction.  The
motion, in relevant part, is set forth below:

Gerdes has been held in civil (or coercive) contempt for refusal to
comply with an order directing him to turn over property.  But he is also
subject to criminal (or punitive) contempt for blatant disobedience of this
Court=s injunction.  The two acts of
contempt are separate and distinct, and thus the power of the Court to hold
Gerdes in punitive contempt is not restricted by the proper order of coercive contempt. 
Even separate contempt charges brought at the same time are subject to separate
punishments.  Ex parte Stanford, 557 S.W.2d 346, 349 (Tex. Civ. App.CHouston [1st Dist.] 1977, no
writ).  In this case, Gerdes has clearly committed two separate acts of
contempt, a second one occurring months after being held in contempt for the
first.

Fogler
attached to the motion a sworn affidavit in which he attested to the following
in pertinent part:

1.  My name is Murray Fogler.  I represent the
plaintiff in case number 01-H-0435-C on the docket of this court styled John
Kennamer, Mora Kennamer and Laguna Vista International, Inc. v. Roger Gerdes,
Jr. and Carolyn Gerdes.  I am over twenty-one years of age, of sound mind,
and in all respects qualified to make this affidavit.








2.  I have read the foregoing Motion for Show Cause
Hearing, for Order of Contempt against Roger Gerdes, Jr., and know the contents
thereof.  The facts stated therein are within my personal knowledge and the
same are, in all respects, true and correct.  More specifically, the Final
Judgment in this case in favor of John Kennamer remains unsatisfied, and the
Turnover Orders issued by the Court have never been complied with.

At a hearing on the matter, Fogler presented a photocopy of
the lease, which was purportedly signed by Gerdes=s son.[2] 
Fogler offered a sworn affidavit in which Gerdes=s son denied
knowledge of the lease.  Gerdes sought to cross-examine Fogler as to how Fogler
obtained the document.  Fogler was sworn in and testified to the following in
response to Gerdes=s questions pertaining to the lease:

$                  
Fogler is legal
counsel to Kennamer in the Prior Suit and has been licensed as an attorney in
Texas since 1978.

$                  
Fogler received
the photocopy of the lease in September 2003 from his client, Kennamer, who
received it from another person.

$                  
Fogler
confirmed that the metes and bounds within the lease appear to match the
description of the property contained within documents from trial in the Prior
Suit.

$                  
Fogler does not
know any of the parties whose names are included in the lease.  

Gerdes
also sought to cross-examine Kennamer as to the source of the document.  In
response to Gerdes=s questions, Kennamer testified that he
received the photocopy of the lease from a woman associated with the property.

In his closing arguments to the trial court, Fogler
indicated that the motivation behind the motion for contempt, based on the
injunction, was to force Gerdes=s compliance with the turnover orders for
the purpose of satisfying the Prior Judgment, which remained uncollected. 
Fogler pointed to evidence of the prior injunction and the existence of the
lease executed in violation of the injunction.  Gerdes argued that the lease
was forged and fraudulent.








The trial court held Gerdes in contempt of court, and, on
March 11, 2005, ordered Gerdes to be confined for an additional eighteen months
after March 16, 2005, the expiration of the First Contempt Order, or until
Gerdes complied with all turnover orders.  The record does not indicate whether
Gerdes ever complied with the turnover orders; however, Gerdes was released
following a decision by the Thirteenth Court of Appeals that the Second
Contempt Order was void.[3] 
By the time the Thirteenth Court of Appeals declared the Second Contempt Order
void and ordered Gerdes released, Gerdes had spent an additional ten months and
fifteen days in confinement beyond the initial eighteen-month contempt period.

The Claims Asserted in this Case

Upon his release, Gerdes sued Kennamer and Fogler seeking
damages for abuse of process, malicious prosecution, and false imprisonment. 
All of these claims were based on Kennamer=s motion for
contempt, which culminated in the Second Contempt Order.  At the heart of each
claim was Gerdes=s allegation that he was imprisoned for a
period of ten months and fifteen days longer than the law permits.  








Kennamer and Fogler filed traditional and no-evidence
motions for summary judgment.  They raised a defense of privilege, claiming
immunity from liability because their conduct, in filing the motion for
contempt, arose out of judicial proceedings.  In support of their traditional
summary judgment motion, they attached, among other things, the turnover
orders, the motion for order of contempt, the trial court=s contempt orders,
and depositions of both Gerdes and Fogler.  Gerdes, in response to both
motions, submitted evidence, including the trial transcript from the contempt
hearing, depositions from Fogler and Kennamer, the Thirteenth Court of Appeals= opinion and
judgment voiding the Second Contempt Order, Kennamer=s response to
Gerdes=s writ to the
Thirteenth Court of Appeals, and Gerdes=s sworn affidavit
attesting that the lease is fraudulent.  The trial court granted both motions
for summary judgment and ordered that Gerdes take nothing on his claims.

II.  Issues Presented

In two issues, Gerdes challenges the summary judgment.  In
his first issue, Gerdes complains the trial court erred in granting the
no-evidence summary-judgment motion, arguing that he proffered more than a
scintilla of evidence for each element of each claim alleged.  In his second
issue, Gerdes complains the trial court erred in granting the appellees= traditional
summary-judgment motion, claiming that, as matter of law, Kennamer and Fogler
were not entitled to summary judgment under a defense of judicial privilege
because they misrepresented the facts and law.  Gerdes also claims that
material issues of fact remain as to his claims for abuse of process and false
imprisonment.

III.  Standards of Review








In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  In reviewing
a no-evidence motion for summary judgment, we ascertain whether the nonmovant
pointed out summary-judgment evidence raising a genuine issue of fact as to the
essential elements attacked in the no-evidence motion.  Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 206B08 (Tex. 2002).  In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). 
When, as in this case, the order granting summary judgment does not specify the
grounds upon which the trial court relied, we must affirm the summary judgment
if any of the independent summary-judgment grounds is meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).  

IV.  Analysis

False Imprisonment

Gerdes argues that he offered more than a scintilla of
evidence as to each of the elements of his false-imprisonment claim.  To
establish a claim for false imprisonment, a claimant must show:  (1) willful
detention, (2) without consent, and (3)  without authority of law.  Bossin
v. Towber, 894 S.W.2d 25, 29 (Tex. App.CHouston [14th
Dist.] 1994, writ denied).  A person who directs, requests, or participates in
the detention may be liable.  Id. 








Notably, the Thirteenth Court of Appeals determined that
the Second Contempt Order was void because in it the trial court essentially
re-punished Gerdes=s prior acts of contempt and ordered him
confined for a period that exceeded the maximum confinement period permitted
under statute.  See Ex parte Gerdes,
228 S.W.3d at 713, 714.  Although liability on a false-imprisonment claim may turn
on the nature and degree of a person=s participation in
the detention, to the degree that Gerdes asserts Fogler and Kennamer Adirected@ or Arequested@ the trial court
to order detention, Aa complainant should not be held liable
for any errors made by a magistrate in ordering the detention.@  See Bossin,
894 S.W.2d at 32.  Instead, the extent and nature of the attorney=s participation in
the detention is viewed as a critical factor for determining whether to impose
liability against the attorney (Fogler) for false imprisonment.  See id.  AOnly if the
attorney is the active and procuring cause of the detention, and misrepresents
the facts or the law, should he or she be held liable.@  Id.

Gerdes contends that Fogler made misrepresentations of fact
and law to the trial court in procuring the Second Contempt Order.  The
record reflects that, at the contempt hearing, Fogler explained that he filed
the motion for contempt on Kennamer=s behalf because
the lease, by its very existence, constituted a violation of the trial court=s injunction. 
According to Fogler, the injunction was the only mechanism to preserve the
property until satisfaction of the Prior Judgment, and was to be lifted upon
Gerdes=s compliance with
the turnover orders.  The motion for contempt contemplated that Gerdes would
continue to Ahold the keys to his own prison,@ and would warrant
release from confinement by his compliance with the turnover orders.








As evidence, Fogler offered the photocopy of the lease that
purportedly contained Gerdes=s son=s signature, the
son=s affidavit
denying knowledge of the lease, and the son=s testimony from
the Prior Suit explaining that Gerdes often asked his son to sign documents
pertaining to the property.  By sworn affidavit, Fogler indicated that the
facts, as contained within the contempt motion, were within his personal
knowledge.  Fogler, through his own testimony at the hearing, when
cross-examined by Gerdes, indicated that his connection to the lease was via
his client, Kennamer and his representation of him in the Prior Suit.  Fogler
denied knowledge of the execution of the lease and presumed that the lease, on
its face, is what it purported to beCa lease covering
the Mexico property.  Although Gerdes claimed the lease was fraudulent or
forged, Gerdes did not deny the existence of the lease, and, in fact, in
cross-examination, asked Fogler to confirm the metes and bounds to verify the
lease=s connection with
the disputed property.  Fogler explained that in connection with Kennamer=s  efforts to
satisfy the Prior Judgment, the injunction served to preserve the property
until Gerdes complied with the turnover orders.  According to Fogler, the
lease, on its face, was executed in violation of the injunction, prevented
satisfaction of the Prior Judgment, and permitted Gerdes or those affiliated
with him to circumvent the turnover orders and thus collection of the Prior
Judgment.  We conclude that Fogler did not misrepresent the facts surrounding
the execution of the lease.

Gerdes
presented the transcript from the contempt hearing in which Gerdes contends
that, in procuring the Second Contempt Order, Fogler misrepresented the law to
the trial court.[4] 
In
Fogler=s argument to the
trial court, he explained that the maximum amount of time a person can be held
in civil contempt for refusing to obey a court order is eighteen months.  Gerdes asserts that Fogler admitted
his familiarity with the law, which allows for a maximum incarceration period
of eighteen months for civil confinement, yet Fogler drafted the Second
Contempt Order Aunder the >theory= that is was for punitive contempt.@

Gerdes cannot establish liability based on the actions of
Fogler and Kennamer in seeking his confinement for criminal contempt.  The
trial court ordered Gerdes=s confinement under civil contempt, which
was inconsistent with the relief sought.  Ex Parte Gerdes, 228 S.W.3d at
712B713.  The Second
Contempt Order was not void because Fogler pursued criminal contempt; it was
void because the civil contempt order re-punished Gerdes for a prior act of
contempt when an order for civil contempt could not exceed the maximum period
permitted.  See id. at 713B14.  Fogler
Ashould not be held
liable for any errors made by a magistrate in ordering the detention.@  See Bossin,
894 S.W.2d at 32. 








Gerdes faults Fogler for representing to the trial court at
the contempt hearing that there was no case law interpreting Texas Government
Code section 21.002(h), which
provides for a maximum of eighteen months= incarceration for civil contempt.  Gerdes asserts
that Fogler next argued
to the Thirteenth Court of Appeals that In re Surgent, 133 S.W.3d 744
(Tex. App.CCorpus Christi 2003, no pet.), was Aat the center of the parties= dispute.@[5]








Gerdes=s complaints lack merit.  As
reflected in the record, any purported statements about the applicability of In
re Surgent were not misrepresentations of law in light of the factual
differences between that case and the case at hand.  The case at hand involved
two separate orders for contempt, one involving the turnover orders and the
other involving an injunction.  See Ex parte Gerdes, 228 S.W.3d at 712 (AThe act at issue, that is, Gerdes=s failure to comply with the trial
court=s injunction . . . constitutes a
completed act of disobedience.@).  Neither subsection 21.002(h) nor In re Surgent
prohibits incarceration under a second contempt order for violation of a
second, separate order.  See In re Surgent, 133 S.W.3d at 751 (providing
that multiple civil contempt orders provided for potentially unlimited
incarceration for a relator=s failure to comply with a single discovery order, and, therefore,
the incarceration was in excess of the limits set by Texas Government Code
subsection 21.002(h)); Tex. Gov=t Code Ann. ' 21.002(h) (Vernon 2004) (providing for a maximum of eighteen
months= incarceration for civil contempt); see
also Ex Parte Gerdes, 228 S.W.3d at 712B13 (reasoning that the trial court,
in ordering civil contempt, could not punish Gerdes a second time for failing
to comply with the turnover orders).  We determine that Fogler did not make
misrepresentations of law to the trial court in procuring the Second Contempt
Order.  We, therefore, conclude as a matter of law that Fogler is not liable to
Gerdes for false imprisonment.[6] 
See Bossin, 894 S.W.2d at 32. 

Furthermore, the derivative liability of Kennamer, Fogler=s client, to
Gerdes is contingent on Fogler=s liability under the principles of
respondeat superior.  See id. at 33.  Because we conclude Fogler is not
liable to Gerdes for false imprisonment, Kennamer cannot be held liable
either.  See id.  Accordingly, the trial court did not err in granting
summary judgment on Gerdes= false-imprisonment claim.  See id.

Abuse of Process

Gerdes argues that he offered more than a scintilla of
evidence for each element of his abuse-of-process claim and he contends that
issues of material fact remain.  The elements of a claim for abuse of process
are (1) the defendant made an illegal, improper or perverted use of the process
that is neither warranted nor authorized by the process; (2) the defendant had
an ulterior motive or purpose in exercising the improper use of process; and
(3) the plaintiff incurred damage as the result of the illegal act.  Id.


An abuse-of-process claim involves the use of a process,
such as a writ, that has been utilized to achieve an end beyond the purview of
what the process was designed to accomplish or to compel a party to do a
collateral thing that otherwise he could not be compelled to do.  Id.  For
abuse of process to be established, the process must have been used improperly
after issuance.  Id.  Even if the process is accompanied by an ulterior
motive, if the process is used for the purpose for which it was intended, no
abuse of process occurs.  Id.  If the claimant alleges that wrongful
intent or malice caused the process to be issued initially, then the claim,
instead, is a claim for malicious prosecution.  Id. 








Gerdes complains that the contempt process, as used by
Fogler in filing the motion for contempt, was not used as it was intended
because Fogler allegedly filed a motion for criminal contempt for Gerdes=s violation of the
injunction to compel Gerdes=s compliance with the turnover orders. 
Gerdes, pointing to Fogler=s arguments at the contempt hearing,
claims that Fogler knew Gerdes already was incarcerated for civil contempt by
his non-compliance.  We reject Gerdes=s contentions for
two reasons.  First, the process that caused Gerdes=s confinement was
the trial court=s contempt order, for which Aa complainant
should not be held liable for any errors made by a magistrate in ordering the
detention.@  See id. at 32.  Second, Gerdes has not
presented evidence that Fogler or Kennamer used the Second Contempt Order in
any manner other than as the trial court prescribed.  See id. at 34
(emphasizing improper use of the process).  For this reason, Gerdes cannot
prevail on his abuse-of-process claim against Fogler.

Because we conclude Gerdes has not demonstrated Fogler=s liablity for
abuse of process, including any purported wrongful litigation conduct, Kennamer
cannot be held liable either.  See Bossin, 894 S.W.2d at 33 (applying
proposition to false-imprisonment claim).  Therefore, the trial court did not
err in granting summary judgment in favor of Fogler and Kennamer on Gerdes=s claim for abuse
of process. 

Malicious Prosecution








Gerdes contends that he presented more than a scintilla of
evidence on his malicious-prosecution claim.  Malicious prosecution involves
procuring the arrest or prosecution of the plaintiff under lawful process, but
with malice and without probable cause.  Dallas Joint Stock Land Bank of
Dallas v. Britton, 134 Tex. 529, 537, 135 S.W.2d 981, 985 (1940); see
also Reicheneder v. Skaggs Drug Ctr., 421 F.2d 307, 310 (5th Cir. 1970)
(quoting Britton for distinguishing malicious prosecution, which stems
from imprisonment under lawful process, from false imprisonment, which stems
from imprisonment without lawful authority); Gonzalez v. City of El Paso,
No. EP-05-CA-447-FM, 2006 WL 2827259, *5 (W.D. Tex. Sept. 27, 2006) (same). 
However, if a contempt order is void, then malicious prosecution is not a
remedy.  Britton, 134 Tex. at 537, 135 S.W.2d at 985.

We find Britton to be instructive.  As in this case,
the contempt order in Britton was void.  See id. (involving an
order of contempt that was void for want of jurisdiction).  Because the process
in this case was void, as in Britton, a claim for malicious prosecution
is not a remedy.  See id. (AIn our research we
have been unable to find any case in any court where malicious prosecution has
been sustained as a result of a contempt action.  Plaintiff seems to rest his
whole case upon the fact that the Supreme Court held the contempt order void. 
The process being void, malicious prosecution is not a remedy.@) (emphasis in
original).  In support of their traditional motion for summary judgment,
appellees cited Britton with respect to Gerdes=s claim for
malicious prosecution on the element of probable cause.  The trial court did
not commit error in granting summary judgment on these grounds.[7]

V.  Conclusion

The summary judgment record contains no evidence to support
one or more of the essential elements of Gerdes=s claims for false
imprisonment, abuse of process, and malicious prosecution.  Therefore, the
trial court did not err in granting summary judgment in favor of Fogler and
Kennamer on these claims.  Accordingly, we overrule all issues raised on appeal
and affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

Panel consists of Justices Frost, Brown, and Boyce.









[1]  In their briefing, the parties do not distinguish
between Fogler and McDade Fogler, LLP regarding the issues in question. 
Therefore, for simplicity, we refer throughout this opinion to Fogler, although
the same analysis applies to McDade Fogler, LLP.





[2]  Fogler also presented a transcript of the son=s testimony in the Prior Suit in
which the son explained his father often asked him to sign documents in
connection with the property even though the son did not understand the
documents written in Spanish.





[3]  The appellate court determined that the Second
Contempt Order was imposed as a coercive civil sanction against Gerdes in
requiring his compliance with the turnover orders.  See Ex parte Gerdes,
228 S.W.3d 708, 712B13 (Tex. App.CCorpus
Christi 2006, no pet.).  The appellate court concluded that the Second Contempt
Order, as imposed, was inconsistent with the relief requested: criminal
contempt.  See id. at 712, 713.  In the order, the trial court attempted
to impose a second coercive civil sanction against Gerdes by attempting to
force his compliance with the turnover orders, rather than impose a sanction
for his encumbrance on the disputed property.  See id.  The appellate
court ordered Gerdes to be released from jail under the Second Contempt Order,
reasoning that, in its civil order, the trial court attempted to re-punish
Gerdes for a prior act of contempt, and concluding that a civil contempt order
could not exceed the maximum confinement period permitted.  Id. at 713,
714. 





[4]  Gerdes relies upon Fogler=s asserted misrepresentations to establish false
imprisonment, and also to establish the malice element of Gerdes=s malicious prosecution claim  We address malicious
prosecution below. 





[5]  In his appellate brief, Gerdes does not provide
record citation of this statement he claims Fogler made regarding the
applicability of In re Surgent.  Our own independent review of the
record evidence does not reveal whether Fogler made this statement, although it
appears this statement may have been made in Fogler=s AResponse to a
Supplement to the Writ of Habeas Corpus@ to
the Thirteenth Court of Appeals, which is not included in our appellate record. 
However, in our review of the record, we found the following statements at an
October 17, 2005 hearing:  AI don=t believe that=s
what the law is.  I don=t believe they have any case[s] that say that.  The
statute is very new.  I=m not aware of any cases that interpret it that way. 
It=s our interpretation and what we=re here today on is to seek an order of contempt on a
new order that the Court has never heard before for which Mr. Gerdes has never
been held in contempt for.@  Although the
record does not reflect who spoke these words, we presume Fogler made these
statements.  Following these statements, Gerdes=s attorney tendered the case of In re Surgent for Fogler=s review; however, the record does not contain a
transcript for the rest of the hearing.





[6]  Likewise, because we conclude Fogler did not
misrepresent either the facts or the law to the trial court, we do not reach
the merits of Gerdes=s argument that the appellees were not entitled to
summary judgment based on a defense of judicial privilege with respect to the
alleged misrepresentations. 





[7]  Because disposition of this issue favors Fogler, we
do not reach the merits of Fogler=s
conditional cross-issue in which he contends that the trial court should not
have excluded an affidavit in which Fogler=s
expert discussed the legal effect of the lease.