## YELLOW CAB CORPORATION v. HALFORD et al.

### No. 11763

Court of Civil Appeals of Texas. Dallas.

Jan. 11, 1936.

Rehearing Denied Feb. 15, 1936.

Clark & Rice, of Dallas, for plaintiff in error.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for defendants in error.

BOND, Justice.

This is a common-law negligence suit for damages resulting from alleged personal injuries received by C. M. Halford, plaintiff in the court below, in an automo-

bile collision against the Yellow Cab Corporation, defendant in the court below, in which American Indemnity Company, intervener, sought to share in the recovery. As a result of a trial to a jury, judgment was rendered for Halford in the sum of $14,417 and for the American Indemnity Company in the sum of $2,770.

For brevity, the parties will be hereafter designated as they were designated in the court below.

The findings of the jury convicted the driver of defendant's taxicab on the occasion of the accident guilty of negligence, proximately causing the collision and injury in the following respects: (1) As to speed in excess of 20 miles per hour immediately prior to the collision; (2) as to operating the taxicab at a high, dangerous, and reckless rate of speed in excess of that at which a person of ordinary prudence and judgment would have operated the taxicab under the circumstances at the time and place of the collision; (3) as to the rate of speed in excess of that at which a person of ordinary prudence and judgment would have operated the taxicab under the circumstances at the time and place of the collision; (4) as to the failure to keep a proper lookout; (5) as to the failure to reduce the speed of the taxicab in approaching the ice wagon in which Halford was riding; (6) as to the failure to sound the horn on the taxicab; (7) as to the failure to have the taxicab under control; (8) as to the failure to pass to the left of the ice wagon; and (9) as to the discovered peril in failing to see the perilous position of the ice wagon in time to stop the taxicab.

The jury further found that the collision was not the result of an unavoidable accident; that Halford received injuries to his body on the occasion of the collision; that Halford was not guilty of contributory negligence; that the collision was not the result of the taxicab skidding; and that the plaintiff suffered damages in the sum of $17,187, "as a direct and proximate result of the injuries sustained by him in the collision in question."

In submitting the issue of plaintiff's allowable damages, the court charged the jury, as follows: "In connection with the foregoing issue you are instructed that at the time and on the occasion of said accident, plaintiff was afflicted with a right and left inguinal hernia. You are instructed that you cannot allow him anything by reason of said hernia condition, or other ailment, if any, that existed prior to the collision by reason of any mental or physical suffering, if any, had by him in the past or by reason of any physical or mental suffering you may believe from a preponderance of the evidence to be occasioned him in the future or by reason of any diminished capacity to labor or earn money, if any found, in the past or in the future, or any other injuries resulting from said former condition which you may believe from the evidence has resulted or will result by reason of the former condition and afflictions of plaintiff, if, however, you believe from a preponderance of the evidence that plaintiff's former afflictions were aggravated on said occasion and that said aggravation, if any, thereof resulted from the collision and that the collision was the proximate cause of such aggravation, if any, then you will allow the plaintiff for such of those items of damages enumerated in said issue which you believe from a preponderance of the evidence directly resulted from such aggravation, if any, and for such other injuries, if any, plaintiff sustained at said time and on said occasion."

The plaintiffs' pleadings and evidence, we think, support the findings of the jury; and, in addition thereto, reveal that prior to the accident plaintiff had a right and left inguinal hernia, one described in evidence as being the size of a grapefruit and the other as large as a tennis ball, which were aggravated as a result of the negligence of the defendant's agent, necessitating an operation therefor, and from which phlebitis resulted, causing swelling in the plaintiff's legs and feet; that the plaintiff suffered the loosening of the sacro-iliac joint, resulting in arthritis, evidenced by a lipping of plaintiff's lumbar vertebra, causing a limitation of motion; that the accident caused a visceroptosis, or dropping of the transverse colon or large intestine, producing nausea, constipation, and weakness and neurogenic changes in plaintiff's nerve centers, producing a loss of sexual power; and that plaintiff received numerous bruises and abrasions over his head, neck, back, and hips.

The defendant's pleadings and evidence controvert the submitted issues and, in addition thereto, deny that the existing hernias were aggravated as a result of any negligence on the part of defendant's agent; that an operation was necessary on the hernias due to the accident; that neither the

accident nor any injury or injuries received by plaintiff thereat caused the physical and mental pain and suffering; and affirmatively show that all of the ailments and effects, of which the plaintiff complains, is the result alone of chronic diseased condition existing in him prior to the accident.

■ The defendant presented issues to be submitted to the jury, in effect, inquiring whether the two inguinal hernias were aggravated at the time and on the occasion of the accident; whether plaintiff was afflicted with lipping of the lumbar vertebra prior to the accident; and whether the accident aggravated the vertebra condition. The trial court refused the issues. We are of the opinion there is no error in the ruling of the court. It might be said that the controverted specific facts inquired about may have entered into the ultimate fact in the case as to whether or not the plaintiff was injured as the result of the collision, but, unless the facts inquired about were the sole cause of plaintiff's complaints, such facts would be evidentiary and the answers to the requested issues would serve no purpose whatever in aid of a judgment.

The plaintiff may have had, and there is substantial evidence in the record from which the jury might have found that the hernias were not aggravated by the collision; that there existed a prior lipping of the vertebra; and that the lipping was not aggravated by the occurrence, yet, clearly, such findings would not determine whether plaintiff was or was not otherwise injured. It is very evident, we think, that the plaintiff's prior ailments and diseased condition of his body, if true, would not bar plaintiff's right to recover for injuries he did actually receive at the time and place in question, due to the negligence of the defendant's agent or servant.

The charges requested do not present issues of fact to make plaintiff's cause of action and the defendant's ground of defense; and had the jury answered the inquiries by saying that the hernias were not aggravated by the collision, that there existed prior lipping of the vertebra and the lipping was not aggravated by the negligence of the defendant's agent, such answers could not have afforded the basis of a judgment in favor of the defendant. A party having prior ailments and infirmities may, to the same extent as one not so afflicted, recover for injuries which the evidence shows he actually received as a direct and proximate result of the negligence of another. Evidence was introduced to show injury to the plaintiff's back, hips, neck, and nerves; a traumatic condition of his skin, flesh, and muscles; and the undisputed physical facts of the collision show the plaintiff was knocked from his ice wagon to the paved street, landing on his back, and sustained bodily injuries, evidenced by his suffering and physical condition immediately after the collision. So, we think it cannot be said that the special charges requested express issues which would aid a court in determining the ultimate fact of plaintiff's injury proximately resulting from defendant's negligence.

■ The charge of the court makes inquiry of the jury as to whether the plaintiff was injured "at the time and place of the collision" and "as the direct and proximate result of the negligence of the defendant's agent," and, in addition thereto, the trial court circumscribed the province of the jury in the special instruction, not to allow the plaintiff anything for prior conditions and resulting ailments, thus fully protected the defendant in the matters complained of. The trial court was not called upon to present an inquiry as to whether the prior condition and resultant ailments were the sole cause of plaintiff's complaints. The question of sole cause is a separate and distinct issue, independent of cause or proximate cause and, in the absence of a proper requested charge, the trial court, in not submitting the issue, is not error. Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72; Texas City Transp. Co. v. Winters (Tex.Com.App.) 222 S.W. 541; Galveston, H. & S. A. Ry. Co. v. Williams (Tex.Civ.App.) 217 S.W. 420; Texas & Pacific Ry. Co. v. Dickey (Tex.Civ.App.) 70 S.W.(2d) 614; Shuffield v. Taylor (Tex.Com.App.) 83 S.W.(2d) 955.

■ The defendant further complains of the action of the trial court in refusing to submit a charge making inquiry whether or not at the time of the collision the taxicab involved was operated and controlled by defendant's duly authorized agent in the course of his employment. The evidence is undisputed that the taxicab was the property of the defendant and at the time was being operated by the defendant's driver. In a general way and in substance, so far as may be necessary to an understanding of the acts of the agent, the evidence shows that the driver was specifically employed to haul passengers for

the taxicab company and, after having delivered certain passengers, the driver, in due course of his employment, was returning to town to pick up more passengers, which service he was employed to do. In returning, the driver violated standing and direct orders of the defendant to go to the nearest suburban telephone box maintained by the defendant and call in to the defendant's main office for the purpose of receiving further instructions. Thus, had the driver not violated the express orders, he would not have been at the place where the accident occurred, but in an opposite direction, and the collision would not have happened. We think it is immaterial to defendant's liability that the driver disobeyed the instructions and failed to do his duty, as expressly given him by his employer. The defendant cannot escape its responsibility for the negligence of the driver done in the general course of his employment, because of the wrong done by him in disobeying orders.

In the case of International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 1040, 27 Am.St.Rep. 902, applicable rule is stated thusly: "To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary of his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, the master is liable, although he may have expressly forbidden the particular act."

■ The defendant complains of the action of the trial court in submitting the issue of discovered peril. We think the submission of the issue and the form thereof do not present reversible error because, if erroneous, the judgment would be sustainable if otherwise free from error upon the findings of negligence.

■ It is assigned that the trial court erred in refusing to grant the defendant's motion for new trial, on evidence showing various acts of alleged misconduct on the part of the jury. Some of the acts complained of, if true, do not amount to misconduct. The facts as to the existence of some other acts were disputed and the trial court, in qualifying the defendant's bill of exception, states that the testimony of such misconduct is "rather vague and uncertain and contradicted on all material matters." We think it is the duty of the Court of Civil Appeals to accept the facts stated by the trial court in such qualification, and is bound thereby. Where the evidence regarding misconduct is contradicted by the testimony of the jury, it will be presumed that the trial court resolved all the fact issue against the movent. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.(2d) 770, 771.

■ We have, however, reviewed the testimony bearing on the alleged misconduct, and find no general discussion of objectionable matter as to cause a reversal of the case. True, during the deliberation, one juror casually remarked, in the presence of another juror, that "he would not have had the Halford accident happen to him for $50,000; that, in damage suits, the lawyers get the biggest part of the award, and that if the jury wished to give the plaintiff anything, they would have to give him a large sum; that contingent fees were usually fifty .percent; and that, out of the amount allowed, the plaintiff would also have to pay the compensation carrier, the insurance company, about $2,500." One juror testified that he heard another juror remark, in the presence of the other jurors, "that he was suffering with a hernia, and that he knew and thought it was a fact that an accident such as the Halford accident would almost kill or incapacitate permanently a man suffering with a hernia"; another juror related that he heard the juror say that, "he had a hernia, and the fact that he had a hernia made him know that Halford could have gone on working with his hernia, if it hadn't been for this accident"; another juror said the juror remarked "that he had a hernia, and that a hernia would not incapacitate Mr. Halford from continuing work, if it hadn't been for the accident"; still another juror said that he heard the juror mention in the jury room that he had a hernia; and still another juror testified that "he did not know anything about a statement being made by him that he (the juror) had a hernia and that he, Mr. Halford, would have been able to continue with his work, but for the accident; and, that no one in the jury-room made a statement to that effect." On cross-examination:

"Q. You have stated about those statements not being made in the jury-room, you mean that you didn't hear them made? A. I don't remember.

"Q. They could have been made by other men and you didn't hear it, you don't mean to say that you know positively that you know every word said in the jury-room? A. No, but I was listening."

So, we think the qualification of the court to appellant's bill of exception, that the testimony on this issue of misconduct being "rather vague and uncertain and contradicted on all material matters," finds support in the evidence.

On the mentioning of the attorney's fees, the juror making the suggestion was admonished by other members of the jury, that they could not consider attorney's fees as there was no evidence regarding attorney's fees, and it would not be proper to do so. Whereupon, no further mention of it was made. In this state of the record, the trial court had a right to conclude that the discussion, if it occurred at all, was very limited and very early in the jury's deliberation terminated. Evidently, the court took that view from the aforesaid qualification appended to the bill of exception, which qualification is not excepted to or challenged by the defendant; thus, we must accept the versions of the trial court as to the state of the evidence.

■ The other misconduct complained of is to the effect the verdict of the jury was a quotient verdict. The record discloses a quotient vote was taken as to the amount to see where the various jurors stood so that they might be in a better position to compose their differences as to the amount of the verdict. The record shows that there was no agreement that any man on the jury would be bound by the result, and, after the result was known, there was further discussion as to the amount to be allowed. Some of the jurors wanted to give a higher amount and some a lower amount, resulting finally upon the amount rendered. This does not constitute misconduct. Dallas Ry. Co. v. Hallum (Tex.Civ.App.) 276 S.W. 460; Armstrong Packing Co. v. Clem (Tex.Civ.App.) 151 S.W. 576; Missouri, K. & T. R. Co. of Texas v. Hawkins, 50 Tex.Civ.App. 128, 109 S.W. 221.

We think the record shows no reversible error on account of the closing argument of plaintiff's counsel to the jury; we have carefully considered each of the assignments not specifically above mentioned, see no reversible error; the case is affirmed.

Affirmed.

JONES, Chief Justice (dissenting).

The writer is unable to agree to the opinion of the majority of this court, affirming the judgment of the lower court, hence files this dissent, in respect only to that part of the majority holding, herein discussed.

The undisputed evidence shows that, at the time of the injury, appellee was afflicted with a right and left inguinal hernia. One of the major items of damages alleged and sustained by evidence is, that the injury received on account of appellant's negligence had resulted in the serious aggravation of these existing hernias. Appellant, by its pleadings, denied any such aggravation on the occasion of appellee's injuries, and sustained such contention by evidence. It was therefore a sharply contested issue as to this item of damage. The charge of the court contained the submission of no special issue in respect to this contested issue. This omission was called to the attention of the court by a request for submission of the two following special issues: "No. 6: Do you find from a preponderance of the evidence that plaintiff's right inguinal hernia was aggravated at the time and on the occasion of the accident?" also No. 7: "Do you find and believe from a preponderance of the evidence that plaintiff's left inguinal hernia was aggravated at the time and on the occasion of said accident?" To the refusal of the court to submit these two special issues, appellant duly excepted and has duly presented to this court assignments of error in this respect. The writer is inclined to believe that the failure of the court to submit this controverted issue to the jury was error.

It is true that only ultimate issues of fact should be submitted to a jury, and it is also true that a negative answer by the jury to this controverted issue would not necessarily call for the rendition of judgment in favor of appellant, for there were other injuries complained of by appellee that might call for the assessment of damages in his favor. What is an ultimate issue of fact in respect to appellant's pleaded defenses? Manifestly, it is the submission of any issue of fact that, if found in favor of appellant, would defeat in whole, or in part, appellee's claim for damages.

If this controverted issue had been submitted and found in appellant's favor, then at least a part of appellee's cause of action would have been defeated. His cause of action included not only the allegation of negligence and proximate cause, but also included the injury and the damages resulting therefrom. The issue of an aggravation of the hernia is just as much a part of his cause of action as the issue of any of the other injuries alleged to have been received.

It is well-settled law in this state that, when a defendant pleads an affirmative defense to the whole, or a part, of the plaintiff's cause of action, and the case is submitted on special issues, the defendant is entitled to an affirmative submission of every defense pleaded and sustained by substantial evidence. Article 2189, R.S. 1925, and article 2190, as amended by Acts 1931, c. 78, § 1 (Vernon's Ann.Civ. St. arts. 2189, 2190); Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; St. Louis, S. F. & T. R. Co. v. Wilson (Tex.Com. App.) 279 S.W. 808; Darden v. Denison (Tex.Civ.App.) 3 S.W.(2d) 137; Hulen v. Ives (Tex.Civ.App.) 281 S.W. 350; Texas & P. R. Co. v. Perkins (Tex.Civ.App.) 284 S.W. 683. This right was denied appellant in the matter of the defense under inquiry.

It is true that the learned trial judge, in connection with the submission of the measure of appellee's damages, in the form of a general charge, instructed the jury that:

"You are instructed that you cannot allow him anything by reason of said hernia condition, or other ailment, if any, that existed prior to the collision by reason of any mental or physical suffering, if any, had by him in the past or by reason of any physical or mental suffering you may believe from a preponderance of the evidence to be occasioned him in the future or by reason of any diminished capacity to labor or earn money, if any found, in the past or in the future, or any other injuries resulting from said former condition which you may believe from the evidence has resulted or will result by reason of the former condition and afflictions of plaintiff, if, however, you believe from a preponderance of the evidence that plaintiff's former afflictions were aggravated on said occasion and that said aggravation, if any, thereof resulted from the collision and that the collision was the proximate cause of such aggravation, if any, then you will allow the plaintiff for such of those items

of damages enumerated in said issue which you believe from a preponderance of the evidence directly resulted from such aggravation, if any, and for such other injuries, if any, plaintiff sustained, at said time and on said occasion."

This general charge does not bring before the jury this special defense in the affirmative way contemplated by the special issue law. Missouri, K. & T. R. Co. v. Morgan, 49 Tex.Civ.App. 212, 108 S.W. 724. It is believed that the failure of the trial court to submit affirmatively the defense herein discussed was error.

Notwithstanding the court qualified appellant's bill of exception to the action of the court in overruling the motion for a new trial, based on the misconduct of the jury, to the effect, that the testimony of such misconduct is "rather vague and uncertain and contradicted on all material matters," the writer believes that there was shown such misconduct as calls for a reversal of this case. Such modification of the bill of exception is a legal conclusion, stating the effect of the evidence heard on the motion for a new trial, because of such alleged misconduct, and where the evidence is given in the record, the trial court's conclusion as to its effect becomes a matter of law for appellate inquiry.

As shown by the majority opinion, one juror stated in the jury room that he would not have had Halford's accident happen to him for $50,000; that in damage suits the lawyer gets the biggest part of the haul; and that if the jury wished to give him anything, they would have to give him a large sum; that contingent fees were usually 50 per cent., and that out of the amount allowed, plaintiff would also have to pay the compensation carrier, the insurance company, about $2,500; that one juror testified that he heard another juror remark, in the presence of other jurors, that "he (the juror) was suffering with a hernia, and that he knew and thought it was a fact that an accident such as the Halford accident would almost kill or incapacitate permanently a man suffering with a hernia." Another juror stated that he had had a hernia, and the fact that he had had a hernia made him know that Halford could have gone on working with his hernia, if it had not been for this accident. Another juror gave his version of this juror's remark, that, "He had a hernia, and that a hernia would not incapaci-

tate Mr. Halford from continuing work if it had not been for the accident." This evidence appears to be only negatively disputed, that is one juror said he did not hear it, although he was listening in the jury room. This evidence shows that the jury received other evidence, on a material and sharply contested issue, from another member or members of the jury on the issue of the aggravation of appellee's hernia. That this was misconduct on the part of the jury, the writer thinks clearly appears.

Misconduct of the jury is ground for a new trial, unless it affirmatively appears that no harm resulted from such misconduct. The amount of this verdict alone is sufficient to show harm to appellant, and leads to the reasonable conclusion that the jury was influenced by the evidence shown to have been given by other jurors while considering the amount of the damages to be assessed. In the opinion of this writer, the case should be reversed on the two grounds herein discussed.