**JAMESON v. ZUEHLKE.**

No. 2799.

Court of Civil Appeals of Texas.
Tenth District. Waco.

Nov. 4, 1948.

Rehearing Denied March 17, 1949.

Harry W. Flentge, of Gatesville, and C. O. McMillan, of Stephenville, for appellant.

B. F. Word, of Meridian, and Fitzpatrick & Dunnam, of Waco, for appellee.

TIREY, Justice.

This is a suit for damages for malicious prosecution and assault. The jury's verdict was favorable to plaintiff, and defendant has appealed.

The jury found in its verdict (1) that defendant Jameson acted without probable cause in filing a complaint against plaintiff for the theft of his cow; (2) that he acted with malice; (3) that plaintiff sustained actual damages by being named in the criminal complaint; (4) that such damages amounted to the sum of $100.00; (5) that exemplary damages should be assessed against defendant and they fixed the exemplary damages in the sum of $2000.00; (6) that defendant committed an assault and battery on the plaintiff on the 22nd of October, 1947, and that said assault was not committed in self-defense; (7) that in committing the assault and battery the defendant acted with malice, and that plaintiff sustained actual damages in the sum of $200.00. The jury further found that exemplary damages should be assessed against defendant for said assault and battery and fixed said sum at $200.00.

Point 1 is: "The error of the court in overruling defendant's plea in abatement and of misjoinder of causes of action." We think this point is without merit.

Appellant and appellee lived on adjoining farms and the fence between them was in bad repair. Appellant's stock had been making some depredations on appellee's crops and appellee, acting upon the advice given him by the County Attorney, impounded one of appellant's cows on December 3, 1946. Appellant instituted a search for the cow and shortly found her on appellee's property. Appellant then went to the Justice of the Peace of his precinct for the purpose of filing a complaint for cattle theft against appellee, but failing to find said Justice of the Peace he went into an adjoining precinct where he found the Justice of the Peace of such precinct and filed a complaint for cattle theft and caused appellee to be placed under arrest. Appellee was arrested about seven or eight o'clock in the evening on December 4, 1946 and carried to the jail at Meridian, but was not actually confined in the jail, and was released on an appearance bond about four or five hours after his arrest. Appellee was not indicted by the Grand Jury and the charge filed against him was dismissed. Appellee later filed suit against appellant for malicious prosecution and appellant was served with citation. Shortly after this, appellant and appellee were both attending a public auction for the sale of livestock at Clifton. Appellee took a seat provided for the general public and was sitting down at the time appellant approached him and struck him on the arm with some object and invited him to come outside of the building and fight. Evidence was tendered to the effect that appellant cursed appellee and applied vile epithets to him, also that appellee cursed appellant and applied vile epithets to him. Appellee followed appellant outside and his excuse for doing so was that he thought he would have to fight the appellant sometime. After they got outside appellant struck appellee two blows before appellee started fighting. After the fight was over appellee required the services of a physician, it being necessary to take six stitches to close one of the facial wounds. Evidence was also tendered to the effect that appellant's nose was broken in the fight. Both parties pleaded guilty to fighting and paid fines in the Justice Court. A few days after the fight the appellee filed an amended pleading in which he asked for damages for malicious prosecution and for the assault and battery committed upon him by the appellant. We think the record is without dispute that both alleged causes of action grew out of a related transaction.

Rule 51, Texas Rules of Civil Procedure, provides in part: "(a) The plaintiff in his petition or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party."

Our view is that where the parties are the same, there are no restrictions except as stated with reference to the requirements of Rules 39, 40 and 43, referred to in Rule 51, supra, which are not pertinent here. Moreover, where the parties are different, full freedom of joinder is permitted subject to the rules of joinder of the parties. In 28 Tex.Jur. 477, sec. 19, we find this statement of the rule: "In accordance with rules elsewhere stated, a cause of action for malicious prosecution may be joined with one for false imprisonment, for libel and slander, for assault, for wrongful attachment, or for breach of contract, where they grow out of the same or a related transaction." Under the record the only ill feeling existing between appellant and appellee originated out of the appellant's stock depredating on appellee's crops. The complaint for cattle theft arose out of the fact that appellee impounded one of appellant's cows while she was depredating on his crops. The jury had the right to infer that this ill feeling was further increased by appellee filing his damage suit against appellant for malicious prosecution; otherwise, an assault may not have occurred. There is no question but that these transactions are related. "The general rule is that causes of action based on distinct subject matters and enforceable against different defendants or against a single defendant in different capacities may not be joined. On the other hand, separate and distinct causes of action may be joined when they are in the same plaintiff, in the same capacity and against the same defend-

ant in the same capacity, provided such separate causes are of the same nature and involve the same relief, or arise out of the same act or transaction. * * * The right to join causes of action is said to depend on whether the court can grant full relief under the particular circumstances involved, and whether the diverse nature of the defenses which would naturally be interposed to the various causes of action would suggest the propriety of keeping them apart." 1 Tex.Jur. 644, 645. This rule, we think, is in keeping with Rule 51, supra. We think the trial court acted wisely in trying both claims together. Our view is that the trial court could not properly adjudicate the rights of the parties growing out of these matters without taking a comprehensive view of the entire transactions out of which the claims arose. But if we should be mistaken in what we have said, we think appellant's point is without merit because he did not except to the court's main charge wherein the court submitted the damages, both actual and exemplary for assault, as well as the issue of actual and exemplary damages growing out of the charge of malicious prosecution. Defendant in his exceptions to the court's charge raised two points. One was substantially to the effect that no charge should be given except for an instructed verdict in favor of appellant, and, second, because the court's main charge failed to charge on provocation as a mitigation of damages as an element that may be considered as determining malice in connection with Issue No. 8. It is true that appellant in his motion for instructed verdict did set out that the court should not submit the issues with reference to assault and battery because the evidence showed that it was only an affray and that both plaintiff and defendant entered a plea of guilty for an affray and paid a fine for the same, but this was in his motion for an instructed verdict and such point was not raised in his exceptions to the court's main charge. Our view is that appellant's second point wherein he claims that the evidence was insufficient to show malice for want of probable cause should be overruled, as well as his third point that the court erred in its failure to grant an instructed verdict.

Appellant's fourth point is to the effect that the court erred in permitting Sam Smith, the County Attorney, to testify as to the conversation between himself and plaintiff, which conversation occurred out of the presence and hearing of defendant, and the fifth point that the court erred in permitting plaintiff, while making out his case in chief, to introduce evidence of appellant's general bad reputation as a peaceable and law abiding citizen.

The pertinent evidence with reference to point 4 is that on December 3, 1946, appellant's cow was on appellee's premises and appellee went first to the sheriff and sought his advice and the sheriff directed him to the county attorney and the county attorney's evidence was substantially to the effect that he advised appellee to place the cow in one of his pens and notify appellant where his cow could be found and let the appellant pay him for his damages. It was without dispute that when appellant found his cow on appellee's premises and in his lot that he proceeded to file a complaint against appellant for theft of his cow without making demand on appellee, or without conferring with the county attorney. It appears that appellant went to one Justice of the Peace, who was absent, and then went into another precinct where he found a Justice of the Peace and where the complaint was filed.

In 38 C.J., § 159, page 482; 54 C.J. S., Malicious Prosecution, § 86; we find this general rule, which we think is applicable here:

"* * * Plaintiff may give evidence of his good character and reputation as a part of his case in chief for the purpose of establishing want of probable cause if his reputation was known to defendant at the time the prosecution was commenced, or was of such general notoriety that defendant will be presumed to have known it, but not otherwise."

In 38 C.J., § 168, page 485; 54 C.J.S., Malicious Prosecution, § 89, we find this rule:

"In general, all evidence legitimately tending to establish, on the one hand, the absence of probable cause, and on the other, its existence, at the time of the in-

stitution of the original proceeding, including relevant statements of third persons, as shown to have come to defendant's knowledge, is admissible. And, on the other hand, evidence which has no legitimate tendency to prove probable cause or the absence of it should be excluded, as the inquiry must be material and relevant to the issue."

▌ It was the duty of appellee to prove that he had been prosecuted as charged, that the prosecution was at an end, the falsity of the alleged charge of cattle theft, as well as want of probable cause and malice which caused the filing of the complaint and the damage he sustained by reason thereof. See Mosley v. Harkins, Tex.Civ.App., 147 S.W.2d 309, points 1-2. It is true that the testimony given by the county attorney was hearsay but we believe that it comes within some of the exceptions of the hearsay rule. In Southern Underwriters v. Boswell, Tex.Civ.App., 141 S.W.2d 442, point 17, page 449, we find this statement: "We are not unmindful of the general rule applicable to hearsay evidence. Even that rule is not without many well established exceptions; they are based upon necessity, practical common sense, and upon the supposition that the circumstances surrounding each situation, the proposed evidence, affords a sufficient probability of its truth to enable a jury to weigh it as a circumstance tending to establish the fact sought to be proved." Moreover, we think it is admissible under what is sometimes called the best evidence rule "for the simple and sufficient reason that it is the best evidence available to prove the fact at issue." See Prater v. Traders & General Ins. Co., Tex.Civ.App., 83 S.W.2d 1038, point 2, page 1039. Since appellant and appellee lived on adjoining farms and since appellant knew the fence between them was in bad repair and knew that his cattle had been depredating on the farm of appellee, and since appellant and appellee had discussed the question of repairing the fence between them, we think that the acts of appellee in seeking the advice of the sheriff and the county attorney is highly pertinent to establishing the fact as to whether he was acting in good faith in doing what he did in placing appellant's cow in his pen or

whether it was his intent to commit a theft. The evidence is without dispute that appellee sought the advice of the sheriff and the county attorney before he impounded the cow. We see nothing in the testimony given by the County Attorney Smith to prejudice the rights of appellant, nor to inflame the minds of the jury against him. Accordingly, appellant's fourth point is overruled.

▌ Did the court commit error in permitting plaintiff, while making out his case in chief, to tender evidence of the appellant's bad reputation as a peaceable and law abiding citizen? We think not. First of all, appellant had filed a charge of cattle theft against his neighbor living on an adjoining farm. The jury believed that such act was done with malice and without probable cause. In the second place, appellant sought a fight with appellee in a public place, it being the first time he had seen appellee since the damage suit was filed against him, and in this public place appellant hit or struck appellee on the arm with an object and invited him to come outside and fight. The general rule is: "The character and standing of the parties, however, may be permitted in determining the amount of exemplary damages." 5 C.J. § 121, page 680; 6 C.J.S., Assault and Battery, § 41. See also Goldsmith v. Joy, 61 Vt. 488, 17 A. 1010, 4 L.R.A. 500, 15 Am.St.Rep. 923. See also Grant v. Pendley, Tex.Com.App., 39 S.W.2d 596, 78 A.L.R. 638. However, if we should be mistaken in this view, we think the testimony adduced is not of such character, under all the facts, to support reversible error.

▌ Appellant's 9th point is that the court erred "in refusing to grant a new trial because of misconduct of the jury while deliberating and reaching a verdict in this case." At the hearing of the motion for new trial each of the twelve jurors appeared as a witness and testified as to what occurred in the jury room in the consideration of their verdict and each was carefully interrogated by counsel for both parties, and in some instances the jurors were interrogated by the trial court. That evidence is before us in question and answer form and it consists of seventy pages, all

of which we have carefully considered. Our Supreme Court in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, points 2-6, page 464, in construing and applying Rule 327, T.R.C.P., held: "If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final." Our view is that the evidence tendered by the jurors as to misconduct was conflicting, and in view of the fact that the trial court has passed on this question adversely to the appellant, we overrule this assignment. See also cases collated in Callahan v. Hester, Tex.Civ.App., 181 S.W.2d 294, points 5-6, page 297.

Point 6 is to the effect that the court erred in rendering judgment for $2000.00 as exemplary damages for malicious prosecution because the jury found the actual damages to be only $100.00, and the 7th point to the effect that there were no pleadings to form the basis of the judgment, and the 8th point that the judgment is excessive under the evidence.

We have carefully examined plaintiff's pleadings on which he went to trial and we think they are sufficient to tender the issue of actual and exemplary damages and sufficient to form the basis of the judgment rendered, and appellant's 7th point is overruled.

The 6th and 8th points have given us great concern. This for the reason that our Supreme Court has not, so far as we have been able to determine, given us any exact rule by which we can determine whether the amount of exemplary damages awarded by the jury are excessive in those cases arising out of the filing of criminal complaints. In 1882 our Supreme Court in Willis & Bro. v. McNeill, 57 Tex. 465, had before it the question of whether the exemplary damages awarded were excessive, which question arose out of the issuance and wrongful levy of a writ of attachment, in which cause the jury found $1084.50 as actual damages for such wrongful levy and $12,000.00 as exemplary damages. Although the opinion shows that the cause was reversed and remanded on several grounds, the opinion held outright that the verdict was excessive "and should have

been promptly set aside", and in discussing the rule said:

"Exemplary damages are said to rest in the sound discretion of the jury. This discretion is often abused, but the courts, from the very necessity of the case, are frequently embarrassed, in deciding where the line of proper discretion ends, and where that of arbitrary abuse commences. The legislature wisely, in the administration of the criminal law, has seen proper to limit this discretion, by providing as a general rule in those cases where a fine in money is prescribed, either as the only punishment, or as an alternative for imprisonment, that the same shall not be less nor more than a certain amount. As illustrations, the fine for false imprisonment does not exceed $500.00; for libel, which affects the reputation and may also affect the business credit of a party, is not less than $100.00 nor more than $2000.00; for malicious prosecution to extort money or for the payment or security of a debt, very similar to the wrongful and malicious suing out an attachment, not less than $100.00 nor more than $1000.00; for malicious mischief to property, was, under our former statutes, regulated in many cases by the value of the property, generally not to exceed three times its value, is under the Revised Statutes from $10.00 to $2000.00. That in criminal cases, the legislature, both for the protection of society and of the individual offenders, should place a limit on the verdict of a jury, and yet exemplary damages, which are allowed only in those civil cases which are quasi-criminal in their nature, and then as a fine or penalty, should rest in the discretion of a jury, whose verdict in a great majority of cases far exceeds the highest fines allowed by law in criminal cases, is an inconsistency which may well arrest the attention of the legislative and judicial minds. By analogy, in the absence of a more definite rule, we might look to the example of the legislature in those cases in which they have fixed a minimum and maximum amount proportioned to the actual injury received."

Our Supreme Court then said:

"What was said by this court in Railroad Co. v. Nichols, decided at Austin term, 1882, is applicable in this case, that 'ex-

emplary damages, when allowed, should bear proportion to the actual damages sustained' * * * and that 'in this cause the actual damages assessed by the jury were $2000.00, a sum probably not excessive under the facts of the case; but the exemplary damages were assessed at $8000.00, which to us seems so clearly excessive when contrasted with the sum found for actual damages, and considered with reference to the facts of the case, that we are forced to the conclusion that it was the result of passion or prejudice, stimulated, perhaps, by the course pursued on the trial.' "

Our Supreme Court in 1890 in the case of Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315, 316, had before it the question of excessive exemplary damages growing out of the malicious suing out and levy of an attachment wherein the jury awarded $150.00 as actual damages and the sum of $10,000.00 as exemplary damages. This case was reversed on other grounds, but in the opinion the court said:

"In view of the disposition that will be made of the case, it does not become necessary now to pass on the sufficiency of the evidence to sustain the verdict for exemplary damages. It is insisted, however, that there is a rule of law which requires that in such cases there be some fixed proportion between the actual and exemplary damages awarded. It has been said in some cases that exemplary damages should not be disproportioned to actual damages, but it was not meant by this that the one should be any exact or approximate ratio to the other. All that was meant was that the imposition of heavy exemplary damages, when the actual damages recoverable were small, was a fact which ought to be looked to, to determine whether passion rather than reason dictated the verdict. Whenever this appears, or is rendered highly probable, by contrasting the actual injury with the extent of punishment awarded, looking to all the circumstances of aggravation, new trials should be granted."

We think it pertinent to observe that Chief Justice Stayton, who wrote the opinion in the Tynberg case, was a member of the Supreme Court at the time the opinion was written in the McNeill case.

The foregoing opinions by our Supreme Court have been cited many times and much has been written on this question, but in each of the foregoing cases the question of exemplary damages arose out of the wrongful issuance and levy of an attachment, whereas in the case before us exemplary damages were awarded because of malicious prosecution occasioned by defendant having filed a charge of theft against plaintiff for stealing defendant's cow. This court, in the case of Dallas Joint Stock Land Bank v. Britton, Tex.Civ. App., 114 S.W.2d 907, 912, had before it "a suit for malicious prosecution wherein plaintiff alleged that defendant entered into a conspiracy to harass, persecute, imprison, malign, injure and maliciously prosecute plaintiff by instituting a series of suits, petitions requiring plaintiff to appear in the District Court of Dallas County, Texas, to show cause why he should not be punished for contempt." In that case a district court in Dallas County found that the plaintiff was in contempt of court and ordered his commitment and plaintiff was arrested in McLennan County (where he lived) and was taken to the county jail in Dallas County, where he was imprisoned for a period of three days. The jury awarded to the plaintiff $4000.00 actual damages and $5000.00 exemplary damages, and the trial court required plaintiff to remit $1500.00 actual damages and entered judgment for plaintiff for $2500.00 actual and $5000.00 exemplary damages. In disposing of the question of exemplary damages (opinion by the late Justice Alexander), this court sought to follow our Supreme Court in the McNeill and Tynberg cases, and held:

"Under our present statute, the maximum fine for malicious prosecution is $1,-000, and for conspiracy or combination to maliciously prosecute $2,000. Penal Code, articles 1298 and 1299. (Art. 1298 aforesaid provides: "Whoever for the purpose of extorting money from another, or the payment or security of a debt due him by such other, or with intent to vex, harass or injure such person, shall institute or cause

to be instituted any criminal prosecution against such other person, shall be fined not less than one hundred nor more than one thousand dollars, or be confined in jail not less than one month nor more than one year.") In the light of the facts of this case and the law applicable thereto, we have reached the conclusion that a judgment for $2,500 would be ample punishment to the defendant and would be sufficient to deter others from similar infractions." (Parenthesis ours.)

The statute above quoted was in force and effect in 1879 and was therefore in force and effect when the Supreme Court rendered its opinion in the McNeill case, supra. It was not discussed in that opinion, but we feel that the construction placed upon this statute by this court in the Britton case is on the whole consistent with the statements of our Supreme Court in the McNeill case, although there are parts of the opinion from which a contrary impression could be drawn. We refer to the illustrations in the excerpt quoted from the McNeill case. But our view of the opinion in its entirety is that the opinion of the late Justice Alexander properly construed the holding of the Supreme Court in the McNeill case, and that Art. 1298, supra, must be considered by us in determining whether or not the exemplary damages are excessive rather than the penalty provided by the Penal Code for the offense charged for cow theft. That Article of the Penal Code, 1441, as amended, Vernon's Ann.P.C. art. 1441, provided: "Whoever shall steal any cattle or hog shall be confined in the penitentiary not less than two (2) nor more than ten (10) years." Our Supreme Court in 134 Tex. 529, 135 S.W.2d 981, reversed the Britton case on other grounds and did not discuss the rule applied by this court in holding that the exemplary damages assessed were excessive, so we cannot say with certainty that the opinion of this court in the Britton case is controlling, but we think it is grounded on sound doctrine.

It is well settled that if in our opinion the award of $2000.00 exemplary damages for malicious prosecution is excessive, it is our duty to order a remittitur filed; otherwise to reverse and remand the cause. World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962. In the light of all the facts and circumstances of this case and our view of the applicable law, we have reached the conclusion that the award of $2000.00 exemplary damages for malicious prosecution is excessive and that a judgment for $1000.00 would be ample punishment to the defendant and would be sufficient to deter others from similar conduct. See authorities cited in points 10-12, Britton case, supra.

This court being of the opinion that the verdict and judgment of the trial court is excessive in the sum of $1000.00 and that said cause should be reversed for that reason only, it is our duty under Rule 440, T.R.C.P., to call the matter to the attention of the attorneys for appellee and specify within what time he may file remittitur of such excess. Accordingly, appellee is given ten days from this date in which to file remittitur of $1000.00 of the exemplary damages awarded for malicious prosecution; otherwise, the judgment will be reversed and the cause remanded. If such remittitur is filed within the time indicated, the judgment of the trial court will be reformed and affirmed as herein indicated.

### Opinion After Entry of Remittitur

Appellee, Albert J. Zuehlke, has entered the remittitur of $1000.00 as required by a former order of this court. The judgment of the trial court is reformed in conformity with said remittitur, and, as reformed, is affirmed. All costs of appeal to the date of the remittitur will be assessed against appellee.