SEARS, ROEBUCK AND COMPANY et al.,
Appellants,

v.

Sam S. JONES, Appellee.

No. 3443.

Court of Civil Appeals of Texas.

Waco.

May 9, 1957.

After Entry of Remittitur May 23, 1957.

Rehearing Denied June 6, 1957.

Thompson, Knight, Wright & Simmons, Pinkney Grissom, Timothy E. Kelley, David M. Kendall, Jr., Dallas, for appellants.

Carter, Gallagher, Jones & Magee, Dallas, Joe N. Chapman, Sulphur Springs, Ben T. Warder, Jr.. Dallas, for appellee

HALE, Justice.

Appellee, Sam S. Jones, brought this action against Carl Anderson Truitt during his lifetime, and Sears, Roebuck & Company for damages, actual and exemplary, on account of personal injuries alleged to have resulted from a highway collision between two trucks. Appellee will hereafter be referred to sometimes as Jones, Carl Anderson Truitt will be referred to as Truitt, and Sears, Roebuck & Company as Sears. One of the trucks was being operated by Jones, and the other, owned by Sears, was being operated by Truitt, an employee of Sears. Truitt had been instructed to drive the truck of Sears from the latter's place of business in Dallas to Little Rock, Arkansas, his instructions being to depart from Dallas either at 12:00 midnight on January 29 or at 3:00 A.M. on January 30, 1954. Without additional specific instructions from anyone, although permissible under the rules of Sears to do so, Truitt took the truck several hours ahead of the time scheduled and left Dallas at approximately 7:00 P.M., headed towards Greenville. Somewhere in Dallas he stopped and purchased a pint or half pint of vodka, an intoxicating liquor. After leaving the Dallas city limits, he stopped to take a drink and then proceeded on to Greenville. As he was entering Greenville, he stopped at a cafe for a cup of coffee. After re-entering his truck, he drank more vodka. While driving into Greenville, his emergency brake caught on fire and it was necessary to call the fire department. From that point on Truitt could not remember anything that happened prior to and including the time of the collision.

Jones had driven his one and a half ton panel truck from Sulphur Springs to Dallas to deliver a load of cattle on the day before the collision occurred, and he was returning to his home through Greenville immediately before the time of the collision and was following the same route that Truitt was travelling prior to the time he stopped the Sears truck. In the vicinity of Rockwall, the weather became extremely foggy and it was difficult for Jones to see. He had to turn his headlights down onto the low beam and could see probably no more than twenty-five feet, but at most, fifty feet ahead of him. He testified that he was driving at a speed of twenty to twenty-five miles per hour when suddenly he saw the truck stopped ahead of him. The collision ensued at about midnight and resulted in an almost total destruction of Jones' truck.

During the pendency of the suit, Truitt died and his wife, as administratrix of the estate of her deceased husband, hereinafter referred to as Mrs. Truitt, was substituted as a party defendant in lieu of the decedent. The case was tried before a jury, and on special issues answered favorably to Jones, judgment was rendered for him against Mrs. Truitt and Sears, jointly, for the sum of $52,111 as actual damages, and judgment was rendered against Mrs. Truitt, only, for the additional sum of $500 as exemplary

damages. Mrs. Truitt and Sears, who will hereafter be referred to jointly as appellants, duly filed and presented their motion for new trial which was overruled, and hence this appeal.

Appellants say under the first point in their brief that the trial court erred in overruling their motion for continuance, based upon the absence of appellee at the time of trial. After both parties had announced ready, counsel for appellants were informed that appellee would not be present at any time during the trial. Thereupon, appellants filed their first motion for a continuance, in which they alleged that although appellee's deposition had been taken on two prior occasions, it had been taken only for discovery purposes. They alleged the facts which they proposed to establish by the testimony of appellee, the application being in substantial compliance with the requirements of Rule 252, TRCP. This record shows that appellants took the oral deposition of appellee on November 19, 1954 and again on September 21, 1955, and that the case came on for trial on May 7, 1956. The pleadings of appellee had been on file many months prior to the trial date, and appellants had been apprised of the fact that appellee was claiming that he had sustained a mental and nervous condition as a result of the accident involved in this case. On September 7, 1955, counsel for appellants took the oral deposition of Dr. Homer F. Bolding, a psychiatrist, who testified on the trial of this case that in his opinion Mr. Jones should not appear in court as a witness and should not even be present. Dr. Howard Sigler also testified that in his opinion if Mr. Jones appeared as a witness and subjected himself to cross examination, he might have a nervous breakdown.

■ It is well settled that the action of the trial court in denying an application for a continuance will not be disturbed on appeal unless the record discloses a clear abuse of discretion. Mitchell v. Mitchell, Tex.Civ.App., 233 S.W.2d 187; Motor Finance Co. of Texas v. Allen, Tex.Civ.App., 252 S.W.2d 1022 (er. ref. n. r. e.). In determining whether the trial court has abused its discretion in denying a motion for continuance, the alleged facts, along with the testimony taken on the trial of the case, should be considered together. Dallas Ry. & Term. Co. v. Durkee, Tex. Civ.App., 193 S.W.2d 222 and authorities. It appears that the facts which appellants stated in their motion for continuance they expected to prove by the testimony of appellee, could have been, and to a large extent actually were, established during the trial by the testimony of other witnesses.

■ We know of no rule of law by which either party to a civil suit may compel his adversary to attend the trial outside of the county where such adversary resides. Furthermore, we see no compelling reason in this case why appellee, or his attorneys, should have apprised their adversaries of the fact that the doctors for appellee had advised him not to attend the trial, or that appellee would or would not follow the professional advice so given to him by his doctors. Therefore, we cannot say the trial court abused the sound judicial discretion vested in him by overruling the motion of appellants for a continuance.

By the second point in their brief, appellants say the trial court erred in admitting into evidence the deposition testimony of appellee concerning the occurrence of the collision in question, in violation of Art. 3716 of Vernon's Tex.Civ.Stats., commonly known as the Dead Man's Statute. On the trial, appellee introduced in evidence his oral deposition which was taken pursuant to an agreement that any or all objections to any question or answer could be made at the time the deposition was offered, with the same force and effect as though the witness were personally present and testifying from the witness stand. When appellee offered his answer in evidence to the question "Now, what's the first thing you saw that indicated to you there was going to be a collision?" counsel for appellants objected

to the proffered answer on the ground that the same would be violative of the Dead Man's Statute. This objection was overruled, as was a subsequent objection going to all the questions and answers in the deposition of appellee with reference to the collision, and appellee was permitted to testify and did testify fully and in detail to the circumstances surrounding the collision. On February 16, 1954, the oral deposition of Truitt was taken and was introduced by appellants on the trial. In this deposition Truitt testified that he did not remember anything concerning the accident, as he was intoxicated, and the last thing he remembered was leaving Greenville. Mrs. Truitt testified that her husband died about six months prior to the date of the trial.

■ Art. 3716, Vernon's Tex.Civ.Stats. provides: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." In their brief, appellants say: "There being no facts showing any reason to disregard the specific provisions of Art. 3716, the admission by the trial court of the testimony of appellee as to the occurrence of the collision clearly was error which would require a remand of this case to the trial court for further proceedings in accordance with the law." We cannot agree with this contention.

■ It is well settled that Art. 3716, Vernon's Tex.Civ.Stats., should be strictly construed. Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707; Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513. The object of this statute is to place the parties on a parity and to prevent one of them, to the detriment of the other, from taking an unfair advantage of the fact that the lips of the deceased have been sealed by death. 14 Tex.Jur. p. 319; Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298; Whatley v. Whatley, Tex.Civ.App., 169 S.W.2d 989 (er. ref.). We do not think the testimony of appellee concerning the circumstances surrounding the collision had the effect of giving him, to the detriment of appellants, an unfair advantage of the fact that the lips of Truitt had been closed by death. The lips of Truitt as to the circumstances surrounding the collision were not closed primarily because of his death, but because, according to his own testimony which was introduced on behalf of appellants, he had become intoxicated and could not remember anything after leaving Greenville. Consequently, Truitt could not have testified to any of the circumstances surrounding the collision, even though he had been alive and had been tendered personally as a witness on the trial. The proper test in determining whether testimony violates the provision of this article of the statutes is whether or not, if the witness testified falsely, the deceased, if living, could have contradicted such false testimony of his own knowledge. Huff v. Huff, Tex.Civ.App., 72 S.W.2d 675 (er. dis.); Prichard v. Bickley, Tex.Civ.App., 175 S.W.2d 614 (er. ref. w. m.); Dakoff v. National Bank of Commerce, Tex.Civ.App., 254 S.W.2d 550 (er. ref.); Punch v. Gerlach, Tex.Civ.App., 267 S.W.2d 182 (er. ref. n.r.e.).

■ Furthermore, the testimony objected to was clearly admissible in the trial of the cause of action which appellee asserted against Sears, even though it might have been incompetent in the suit asserted against Mrs. Truitt as administratrix. However, neither Sears nor Mrs. Truitt requested the court to limit the testimony to the cause of action asserted against Sears. As said in Armstrong v. Marshall, Tex.Civ. App., 146 S.W.2d 250, 252, "Since the evidence was admissible as applied to one of the causes of action in suit, and no request was made by appellants to limit it to the other cause of action, and no assignment of

error is urged to the court's failure so to limit it, appellants are not in position to complain of its admission." See also Smith v. Jungkind, Tex.Civ.App., 252 S.W.2d 596 and authorities there cited.

Points 3 to 8 in appellants' brief relate to exemplary damages growing out of gross negligence. It is the contention of appellants that the court erred in submitting issues of gross negligence and in rendering judgment against Mrs. Truitt as administratrix for exemplary damages because there was no evidence of all the essential elements necessary to constitute gross negligence, and because, even though gross negligence were shown, the estate of the deceased tortfeasor was not liable for exemplary damages under the evidence in this record. We sustain this contention. As we understand the law, exemplary damages are punitive in nature and are not assessable against the estate of a tort-feasor. Wright's Administratrix v. Donnell, 34 Tex. 291; Wright v. E-Z Finance Co., Tex.Civ.App., 267 S.W.2d 602 (er. ref. n.r.e.). Furthermore, although the evidence was sufficient to support findings that Truitt was driving the truck of Sears in a state of intoxication prior to the time he stopped the same on the highway, there was no evidence that he acted wantonly or maliciously to such extent as to indicate a conscious indifference to consequences. And, as said by the Supreme Court in Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022, 1024: "The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful." See also Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001; Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 98 A.L.R. 262; Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709.

The submission of Special Issue No. 1 in the court's charge is the subject of complaint in appellants' points of error Nos. 9 to 16 inclusive, such issue reading as follows: "Do you find from a preponderance of the evidence that at the time and place of the collision in question C. A. Truitt was in the course of his employment as a truck driver for the defendant Sears Roebuck & Company?" Appellants say the issue was not raised by the evidence, the instructions of the court in connection therewith were incomplete in that they omitted several essential elements, and the court erred in refusing to submit to the jury the definition of "course of employment" tendered by appellants. We cannot agree with these contentions.

In connection with Special Issue No. 1 as submitted in the court's charge, the court instructed the jury as follows:

"In connection with the following special Issue, you are instructed that the term 'course of employment' is meant an act done in furtherance of the master's business and for the accomplishment of the object for which the servant was employed.

"You are further instructed that a servant engaged upon a mission for his employer is performing an act for the accomplishment of the object for which he is employed; and where a servant acts for the accomplishment of the object for which he was employed, or is acting within the general scope of his authority, he is acting within the course of his employment, although he may perform the duty in a wrongful manner or without specific orders."

Pertinent to the subject of discussion, appellants timely requested the court to submit the following instruction to the jury:

"In connection with Special Issue No. 1, you are instructed that by the term 'course of employment', is meant an act done in furtherance of the master's business and for the accomplish-

ment of the object for which the servant was employed, and in the manner and at the time directed by the master.

"You are further instructed that a servant engaged upon a mission for his employer is performing an act for the accomplishment of the object for which he is employed, and where a servant acts for the accomplishment of an object for which he was employed, or is acting within the general scope of his authority, he is acting within the course of his employment, although he may perform the duty in a wrongful manner or without specific orders, but a servant, though originally engaged in a mission for his employer who interrupts that mission to enter upon a mission of his own, and for his own sole benefit, while upon such mission of his own and for his own sole benefit, is not within the course of his employment for his master."

 We recognize that an employee who turns aside from his master's business, although for only an instant, is not, while turned aside, within the course or scope of his employment and that his master is not liable for any act or omission committed while so turned aside. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367; Robert R. Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W. 2d 506. However, we do not think it can be said as a matter of law that Truitt turned aside from the business of Sears while driving its truck or stopping it on the highway, even though he did drink vodka from time to time while so driving said truck, contrary to the instructions of his employer. It is the well settled rule in this State that where an employee acts for the accomplishment of the object for which he was employed, or is acting within the general scope of his authority, the master is liable for his acts although he may perform his duty in a wrongful manner or without specific orders or in contradiction to specific instructions. Texas Power & Light Co. v. Evans, Tex.

Civ.App., 225 S.W.2d 879; Yellow Cab Corp. v. Halford, Tex.Civ.App., 91 S.W.2d 801 (er. dis.); Gammill v. Mullins, Tex.Civ. App., 188 S.W.2d 986 (er. dis.); Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057; Eilar v. Theobold, Tex.Civ.App., 201 S.W. 2d 237. Consequently, we are of the opinion that the evidence raised the issue as to whether Truitt was in the course of his employment at the time of the collision in question; that the instructions which the court gave to the jury in connection with such issue were substantially correct; and that there was no reversible error in refusing to give the additional definition of "course of employment" as requested by appellants.

By numerous other points of error in their brief, appellants complain of the manner and form in which the court submitted various special issues and instructions in the charge to the jury. To set forth and discuss each of these points in detail would require this opinion to be extended far beyond the length of propriety. However, we have considered each of these points and have concluded that none of them disclose reversible error.

 By the last point in their brief, appellants say the award of compensatory damages to appellee was grossly excessive and we agree with this contention. The record shows that appellee was 62 years of age at the time of the collision, with a life expectancy of 13.27 years, the case having been tried more than two years after the time of the collision. The amount of the damages awarded for personal injuries was $51,411, with $700 being the agreed amount of damages to the truck of appellee. The evidence shows that he sustained no fractures in the accident, but, physically, his injuries consisted only of bruised nerves, muscles, and ligaments of his neck, back and right shoulder. Dr. Bolding, a psychiatrist, testified as a witness on behalf of appellee that he had seen appellee on five occasions from the time of the collision until the time of trial, and it was his diag-

nosis that appellee was suffering from traumatic neurosis. Dr. Bolding also testified that the pending litigation had added to the vexatious condition of appellee's neuroses and that some people suffering from such symptoms fully recover after a pending law suit is terminated.

Appellee testified that he was engaged in the business of buying and selling cattle. He owned eight acres of land where he lives, which he used as a storage pasture for the calves he bought until he acquired a sufficient number to carry them to market. He testified that during 1953, the year prior to his injury, he had a net income of $6,500, and during 1955, the year immediately following his injury, he had a net income of $2,079. Thus, according to his own testimony, if he had continued during his declining years to earn the same amount of money from the date of trial to the end of his life expectancy, the total amount of his lost earnings, based upon a continuation of the earnings he actually had during the year immediately following his injury, would have been less than the amount awarded to him by the jury, to say nothing of the present discount which should have been considered in connection with a lump sum to be paid now in cash as compensatory damages for his injuries. Without further statement from the record, it must suffice to say we are constrained to believe that under the evidence the sum of $38,000 is the maximum amount which could have been reasonably awarded to appellee as compensatory damages for his personal injuries.

From what has been said, it follows that in our opinion, that part of the judgment which awarded appellee exemplary damages against Mrs. Truitt as administratrix should be reversed and judgment here rendered that appellee take nothing against her by reason thereof; that the part of the judgment for compensatory damages is excessive in the sum of $13,411 and because of that fact, it should be reversed and remanded for another trial, unless a proper remittitur is filed in this cause within ten

days from this date; but that, if a proper remittitur is so filed, then, after reversal and rendition of that portion of the judgment relating to exemplary damages, the judgment appealed from will be in all other respects affirmed and it will be so ordered.

Reversed and rendered in part, and in part affirmed, upon condition of a proper remittitur.

McDONALD, C. J., not participating.

### After Entry of Remittitur

TIREY, Justice.

Appellee, Sam S. Jones, has entered a remittitur of $13,411, as required by the former order of this court. Accordingly, the judgment of the trial court is reformed in conformity with said remittitur, and as reformed, is affirmed.

However, as stated in our former opinion, that part of the judgment of the trial court which awarded to appellee the additional sum of $500 as exemplary damages against appellant Mrs. Truitt as Administratrix of the Estate of C. A. Truitt, Deceased, is reversed and judgment rendered that appellee take nothing against her for exemplary damages as such administratrix.

It is further ordered that all costs of appeal to date of the remittitur will be adjudged against appellee. All costs in the court below are adjudged against appellants. See Rule 139, Texas Rules of Civil Procedure and Jameson v. Zuehlke, Tex.Civ.App., 218 S.W.2d 326. The former judgment of this court adjudged the costs of appeal ⅓ against appellee and ⅔ against appellants; that part of the judgment is set aside and the costs are taxed as above stated.

Accordingly, the judgment is reversed and rendered in part and is reformed and affirmed in part.

Appellants and appellee shall have fifteen days from this date in which to file such motions for rehearing as they may deem pertinent.